People of State of Illinois ex rel. John S. Rusch, Appellee, v. Mary Verdon, Iona Thompson, Elsie Mercurio, Adeline Salemi and Hollis Alton Carter, Appellants.

## Gen. No. 43,996.

Opinion filed November 16, 1948. Rehearing denied November 30, 1948. Released for publication December 2, 1948.

GUSTAVE E. RIEDL, of Chicago, for appellants.

WILLIAM J. TUOHY, State's Attorney of Cook County, for appellee; JOHN F. CASHEN, JR., Special Attorney to Board of Election Commissioners, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

An order was entered in the County court of Cook county granting John S. Rusch, Chief Clerk of the Board of Election Commissioners of the City of Chicago, leave to file the following verified petition:

"... ...

"2. That on the 3rd day of June, 1946, an election was held in the City of Chicago, County and State as aforesaid, for the election of judges of the Circuit and Superior Courts of Cook County, and also for certain propositions that were submitted to the electorate at said election.

"3. That at and during said election the following named persons hereinafter called the respondents, served in the election precinct known as the 36th precinct of the 26th ward of said City of Chicago, as judges and clerks of election, as indicated opposite their names, respectively, towit:

| "Mary Verdon | Republican Judge |
| Iona Thompson | Democratic Judge |
| Elsie Mercurio | Democratic Judge |
| Adeline Salemi | Republican Clerk |
| Hollis Alton, Carter | Democratic Clerk |

"4. That at and during said elections each of the said respondents who served at said election misconducted and misbehaved himself as such judge, or clerk of election, as more fully hereinafter appears, and that, as to each of said respondents, his misconduct and misbehavior constituted, as your petitioner is advised, informed and believes, a contempt or contempts of this Honorable Court, said respondents being officers of the County Court.

"5. That petitioner is informed and believes that said respondents permitted applications to be presented and filed and ballots to be cast in the names of persons who did not personally appear at the polling place and vote in said June 3rd, 1946, election; permitted applications containing the forged signatures of voters to be presented and filed and ballots cast in the names of the same; made a false canvass and return of the votes cast.

"Wherefore your petitioner respectfully prays that an order and rule may be entered by this Honorable Court against each of aforesaid respondents, commanding him to be and appear in this court at a time to be designated in said order, then and there to show cause, if any he can, why he, as an officer of said court, should not be adjudged guilty of a contempt or contempts of this court for misconduct and misbehavior in office, and on account of the matters and things hereinbefore alleged."

Respondents were ruled to show cause why they should not be adjudged guilty of contempt and punished for contempt, and writs of attachment were ordered issued against them. After a hearing upon the petition and answers the following judgment order was entered:

"This matter coming on to be heard on the verified petition filed herein and the oral plea of 'Not Guilty' of the respondents, the Court having heard the testimony of witnesses, and the respondents having testified in their own behalf, and having examined all of the evidence and having heard the arguments of counsel, FINDS:

"That MARY VERDON served as Republican Judge, IONA THOMPSON served as Democratic Judge, ELSIE MERCURIO served as Democratic Judge, ADELINE SALEMI served as Republican Clerk and HOLLIS ALTON CARTER served as Democratic Clerk at the Elections held June 3, 1946, and as such were officers of the County Court of Cook County;

"THE COURT FURTHER FINDS, that the respondents, Mary Verdon, Iona Thompson, Elsie Mercurio, Adeline Salemi and Hollis Alton Carter were guilty of misconduct, misbehavior in office as officers of the County Court in the conduct of the elections held June 3, 1946, in the 36th Precinct of the 26th Ward . . . ; and . . . further finds, that the said respondents be-

cause of such misconduct and misbehavior in office as election officials of said precinct and ward, are guilty of contempt of the County Court of Cook County;

"It is Ordered, that the respondents, Iona Thompson, Adeline Salemi and Hollis Alton Carter, be fined in the sum of Fifty Dollars ($50.00) each . . . ;

". . . that the respondents, Mary Verdon and Elsie Mercurio, be committed to the County Jail of Cook County for a period of three (3) months each; ". . ."

Respondents appeal.

Respondents contend: "Petitioner failed to present any convincing evidence that any of the respondents wilfully committed any wrongful act or had any knowledge or means of knowledge of the commission of any wrongful act. What evidence was adduced, fails to show any proof of the guilt of any of the respondents or is it in any way connected with them. The finding of the court is contrary to the evidence which does not support the judgment order."

In their brief respondents admit that. "spurious applications were filed and as a consequence fraudulent ballots may have been in the box"; that "although it can be agreed that some person was guilty of misconduct at the polls, it cannot be said that the respondents were guilty of such wrongful act or acts, regardless of how shocking or revolting they may be to either the public or judicial mind"; that the trial court "in righteous indignation over the presence of these forgeries, failed to recognize that they were in no way connected with any of the respondents . . . ." Briefly stated, the defense is that there is no convincing evidence that the filing of the forged applications and the casting of fraudulent ballots was within the knowledge or means of knowledge of respondents. The voting in the election in question was light and respondents admit that no persons other than respond-

ents and the voters were present at the polling place during the time of the voting at the election and that no one interfered with them in the performance of their duties. *Unfortunately, no watchers appeared at the polling place until 5 o'clock P. M., when the counting of the ballots was commenced.* Two hundred and twenty-three applications to vote were signed at the election. The registration binder containing the signatures of all of the registered voters (People's Exhibit 1) and all of the applications for ballots at the election (People's Exhibit 2) were introduced in evidence by petitioner. Rudolph B. Salmon, an expert examiner of disputed documents, who testified for petitioner, stated that he examined all of the applications and compared the signature upon each application with the corresponding signature upon the registration card and that he was of the opinion that the signatures upon *104 of the 223 applications* were not signed by the persons who signed the corresponding registration cards; that he divided the forged applications into three groups, 1, 2, and 3; that he found that in group 1, 12 of the applications were written by one person; that he found that in group 2, 17 of the applications were written by one person, and that he found that in group 3, 42 of the applications were written by one person. Respondents admitted that if petitioner called as witnesses 29 of the said 104 registered voters, naming them, each would testify that he did not sign the application that bears his name and did not vote at the election. It appears that application number 52 and application number 166 each bears the name of Sam Alli, a registered voter, and it was stipulated that if Sam Alli testified, he would testify that he did not sign either application and did not vote at the election. Petitioner contends that "the signatures on the applications were not similar to the signatures on the registration cards, but were wholly

different. No handwriting expert is required to determine that they are forgeries." Respondents' counsel has not challenged this contention.

Respondents had the right to rebut the testimony of the expert as to the 104 applications by calling the registered voters whose names appear upon the said applications and prove by them that they signed the said applications and voted at the election, but respondents failed to call any of the said voters. In the instant case respondents are in no position to seriously question the testimony of the expert; indeed, counsel for respondents admits that forgeries were committed to such an extent that the trial court had a right to be indignant at the situation presented by the proof.

Although respondents admit that they were in the exclusive and undisturbed control of the election and that fraudulent votes were cast, they contend that petitioner failed to show by direct or circumstantial evidence that any one of the respondents did anything in furtherance of the fraudulent voting and that *there is an utter lack of proof that any of the respondents "had any knowledge or means of knowledge of the commission of any wrongful act."* Counsel volunteers the following advice to the election commissioners: "Change the system so that fraudulent voting can be made possible of proof and you will eliminate fraudulent voting." The law is not so weak as counsel assumes. In *People ex rel. Marski v. Belvedere,* 333 Ill. App. 104, where a somewhat similar situation was present, the court stated (p. 110):

". . . Under the Election Code (Ill. Rev. Stat. 1947, ch. 46, sec. 6-66 [Jones Ill. Stats. Ann. 43.682]) Virginia Belvedere and Dorothy Reamer, as judges of election in charge of the precinct registration files or binders, were required to compare the signature on each application to vote with the signature on the registration record as a means of identifying the voter. They are presumed to know the law. *Sherman v. People,* 210 Ill. 552."

The instant proceeding is a civil contempt and it is sufficient if the guilt of respondents be established by a preponderance of the evidence. (See *People v. Fusco,* 397 Ill. 468, 470.) The guilt of respondents may be proven by direct or circumstantial evidence, and in cases of this kind circumstantial evidence is generally the only evidence that can be produced. We deem it necessary to refer only to certain mountain peaks in the evidence. The proof shows that in group 3 of the applications, 42 of the applications were written by one person, and from this proof we must conclude that one person appeared before the election officials 42 times and that upon each occasion he made application to vote in the name of a registered voter; that each time he was handed an application, and, after he had signed it, was permitted to vote in the name of the registered voter. One person, therefore, impersonated 42 registered voters. What we have just stated applies also to the person who voted 12 times, and to the person who voted 17 times. The claim of all of the respondents that they saw nothing happen during the voting that apprised them that unlawful voting was taking place is destroyed by the proof. The conspirators who did the unlawful voting undoubtedly knew that there were no watchers at the precinct, and it is apparent from their conduct that they entertained no fear that any of the election officials would interfere with their fraudulent acts; indeed, they found it so easy to cast fraudulent votes that they became careless and cast two votes in the name of Sam Alli. It is practically conceded that certain individuals were engaged in a conspiracy to cast fraudulent votes at the election in the precinct and it is clear from the evidence that the respondents who were acting as judges of election actively aided the conspiracy; that the respondents who were acting as clerks of election closed their eyes to the unlawful voting and made no effort to prevent it. By their conduct they became, in the eyes of the law, parties

to the conspiracy. In *People ex rel. Rusch v. Johnson,* 255 Ill. App. 288, 294, we said:

"The plaintiff in error was appointed by the county court to the honorable and important office of a judge of election. His plain duty, under his oath of office, was to guard the ballot box, but he betrayed the trust reposed in him and aided and abetted a conspiracy that had for one of its objects the placing of illegal ballots in the box. . . . Such a conspiracy is in its nature treasonable, for it strikes at the very life of the Republic."

What we there stated applies with peculiar force to the record in the instant case. As stated in *People v. White,* 334 Ill. 465, 482: "The honest conduct of elections is of most vital concern to representative government." All thinking, patriotic citizens know that the Republic will perish if dishonest elections are permitted.

■ Respondents contend that the punishments inflicted are grossly excessive. Respondents are greater offenders than the criminals who cast the unlawful votes, and the punishments inflicted were plainly inadequate.

■ We find no merit in the remaining contention of respondents, that the judgment order is fatally defective and void because it fails to recite that respondents were present in open court at the time of its entry. The instant proceeding is a civil proceeding and is governed by civil procedure. (See *People v. Fusco, supra,* p. 473.)

The judgment order of the County court of Cook county should be and it is affirmed.

*Judgment order affirmed.*

Sullivan, P. J., and Friend, J., concur.