CENTRAL PRODUCTION CREDIT ASSOCIATION, Plaintiff-Appellee, v. DUANE L. KRUSE *et al.*, Defendants-Appellants (Daniel V. Kruse *et al.*, Defendants).

Second District   No. 2—86—0930

Opinion filed June 3, 1987.

John F. Arens, of Arens & Alexander, of Fayetteville, Arkansas, for appellants.

Mark H. Merritt, of Blodgett, Reese, Merritt & Albert, of Rock Falls, and Daniel M. Donahue, of Clark, McGreevy & Johnson, of Rockford, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Defendant, Duane L. Kruse, appeals from a finding of the circuit court of Carroll County that he was in contempt of court. This finding of contempt arose out of a civil action in which plaintiff, Central Production Credit Association (hereinafter CPCA), sought to foreclose a mortgage against the defendants and to, among other things, take possession of certain collateral.

Defendants are farmers who own approximately 500 acres in Carroll County, Illinois. Throughout the initial stages of litigation, they represented themselves *pro se* in a zealous, if not particularly able, manner.

On November 22, 1982, defendant executed and delivered to CPCA a promissory note in the amount of $372,321.99. On May 23, 1986, CPCA filed a complaint alleging that the individual defendants were indebted to CPCA on a promissory note, that the defendants had refused to pay the balance due under the note which amounted to $237,628.07 as of April 30, 1986, that CPCA held a valid and perfected security interest in all the assets described in the security agreement, and that CPCA was entitled to possession of those assets. The complaint requested an order of replevin and other relief. Certain deficiencies in its original pleading caused CPCA to file an amended complaint on July 7, 1986.

A hearing regarding CPCA's motion for order of replevin was held on August 14, 1986. Plaintiff sought possession of assets described in the security agreement which had been appraised at $95,600. At this hearing, the court found that the CPCA had established a *prima facie* case to a superior right to possession of the collateral and had demonstrated that it would ultimately prevail on the underlying claim to possession. The court entered an order of replevin.

On August 15, 1986, the sheriff took possession of some pieces of farm equipment valued at approximately $13,000. The value of the equipment to be possessed was estimated at $95,600.

On August 19, 1986, the court heard CPCA's petition for rule to show cause and a petition for injunctive relief. At this same hearing,

the court denied defendants' motion for rehearing of replevin and a motion for stay of execution of the order for replevin. Both defendants exercised their fifth amendment right to remain silent regarding their alleged failure to comply with the order of replevin. The court issued a rule to show cause.

A hearing of the rule to show cause was held on September 9, 1986. Defendants, present *pro se,* were to show cause why they had ignored the order of replevin dated August 14, 1986, why they should not be held in contempt of court for failing to provide the court and CPCA with the location and condition of the collateral, and, finally, why they should not be held in contempt of court for failing to gather the collateral not found by the sheriff on August 15 and delivering it to the sheriff or CPCA. On the previous day, September 8, 1986, defendants had turned over or divulged the location of most of the missing collateral. The principal issue in the hearing was the location of five items: a 1981 I.H.C. 1486 tractor, a 1980 Graham chisel plow, a set of dual wheels, a Century sprayer, and a gravity wagon. Mrs. Kruse demanded a jury, and the court denied the jury demand, stating that defendants were not subject to being jailed for a specific period of time but only until there was compliance with the court's order of replevin. Mr. Kruse told the court that he had no idea where the 1981 I.H.C. tractor was. The court held the defendant in contempt of court for failure to disclose the location or produce the missing collateral or offer a sufficient reason why he should not be held in contempt. At the request of plaintiff's counsel, a hearing at which defendants could purge themselves of contempt was scheduled for September 15, 1986, and continued to September 25, 1986, at which time defendant was represented by counsel.

At the September 25, 1986, hearing Mr. Kruse testified as to his knowledge of the missing collateral. Defendant stated that he had received the order for replevin on August 27, 1986, and made arrangements with the sheriff and agents of CPCA to gather collateral or advise them of its location by September 8, 1986, the day prior to the hearing on the rule to show cause. Mr. Kruse further testified the missing dual tires and chisel plow were attached to the 1981 I.H.C. 1486 tractor the last time he had seen the tractor, which was in the latter part of May 1986. He did not report the tractor missing because he thought that CPCA had replevied the machine and also because he was embarrassed that his property was being repossessed. Defendant, who by that time knew that the CPCA had not replevied this equipment, opined that the tractor may have been stolen or taken by friends who thought they were doing him a favor by hiding the

machinery.

The court found the testimony of the defendants to be unbelievable, reasoning that litigants who had so zealously defended themselves in this matter would not have failed to report the repossession of their tractor. The court concluded that the only way the defendants could purge themselves of contempt was to produce the missing collateral or indicate where it was located. Mr. Kruse was remanded to the Carroll County jail, and Mrs. Kruse was allowed to remain free so that she could search for the equipment.

On October 3, 1986, the Kruses moved for reconsideration of the finding of contempt. The court denied the motion. On the same day, defendants filed a notice of appeal and a motion to stay the execution of Mr. Kruse's incarceration pending the resolution of the appeal. On October 6, 1986, the court denied the motion for a stay of execution but did authorize the defendants' release conditioned upon the posting of a $10,000 appeal bond along with his adherence to a prohibition against leaving the State of Illinois without written permission of the court and his appearing before the court at its direction.

Defendants filed an emergency motion for stay with the court on October 8, 1986. The motion was denied on October 14, 1986. The Kruses filed a motion for leave to file petitions for writs of prohibition and *habeas corpus* to the Supreme Court of Illinois on November 13, 1986. Without opinion or memorandum, the court denied this motion.

On November 21, 1986, Duane Kruse moved for his release from the custody of the sheriff, alleging that incarceration had lost its coercive effect. An agreement of the parties led to Mr. Kruse's release from incarceration. This release was conditioned on a $10,000 personal recognizance bond. This appeal followed.

The defendants raise three issues on appeal: (1) the requisite elements for a finding of contempt were not proved; (2) the court did not have the jurisdiction to find defendants in contempt of court; and (3) the court's failure to make a written order of contempt violated the defendants' right to due process of law.

■ Before discussing the issues raised in appeal, we note that it is well settled that an order which results in the imposition of a sanction for contempt of court is final and appealable because it is an original special proceeding, collateral to and independent of the case in which the contempt arises. *People ex rel. Scott v. Silverstein* (1981), 87 Ill. 2d 167; *People ex rel. General Motors Corp. v. Bua* (1967), 37 Ill. 2d 180.

We first consider the Kruses' argument that the requisite elements for a finding of contempt of court were not proved.

■ It is well established that the courts are vested with an inherent power to punish for contempt as essential to maintain their authority and to administer and execute judicial power. (*In re G.B.* (1981), 88 Ill. 2d 36; *People v. Javaras* (1972), 51 Ill. 2d 296.) The power to punish for contempt rests within the sound discretion of the trial court. (*In re Estate of Maslowe* (1985), 133 Ill. App. 3d 1043.) The trial court's determination will not be disturbed on review unless there has been an abuse of discretion. (133 Ill. App. 3d 1043, 1046.) Nevertheless, there are limitations to impose contempt. The power to impose contempt is an extraordinary one and, thus, should be exercised only in extreme situations. (*People ex rel. Woodward v. Oliver* (1975), 25 Ill. App. 3d 66.) It should not be used when other adequate remedies are available. *People v. Mowery* (1983), 116 Ill. App. 3d 695.

■ In the instant case, the court defined the type of contempt involved as indirect civil contempt. Here we note the types of contempt and their generally accepted definitions and descriptions. Indirect contempt arises from acts that occur outside the presence of the court. (*People v. Patrick* (1980), 83 Ill. App. 3d 951.) Direct contempt arises from acts that are committed in the presence of the court or any constituent element. (83 Ill. App. 3d 951, 954.) Criminal contempt is conduct that is directed against the dignity and the authority of the court. (*People v. Gholson* (1952), 412 Ill. 294.) Imposition of this form of contempt is punitive in nature. (*Bone v. Bone* (1976), 43 Ill. App. 3d 363.) Civil contempt is coercive in intent and ordinarily consists of failing to do something ordered to be done by a court in a civil action for the benefit of an opposing litigant. *People ex rel. Kazubowski v. Ray* (1971), 48 Ill. 2d 413, 416.

■ The burden of proof employed in this action depends upon the type of contempt that is involved. In matters of indirect civil contempt, a preponderance of the evidence standard is employed. (*People ex rel. Rusch v. Verdon* (1948), 335 Ill. App. 616.) In matters of indirect or direct criminal contempt, the standard employed is proof beyond a reasonable doubt. (*O'Leary v. Allphin* (1976), 64 Ill. 2d 500.) As noted above the trial court characterized this as a matter of indirect civil contempt, which is intended to coerce the defendant's compliance. For purposes of this opinion, this court accepts the trial court's characterization of the contemptuous conduct involved. Nevertheless, the court notes that while the rule to show cause hearings and subsequent hearings regarding the defendant's contempt may have begun as indirect civil contempt proceedings, there is a distinct possibility that at some point, the proceedings shifted from coercive to punitive in nature.

■ This court cannot substitute its opinion for that of the trial court unless we find that the trial court's judgment is against the manifest weight of the evidence. (*Burgdorff v. International Business Machines Corp.* (1979), 74 Ill. App. 3d 158; *Tatum v. Rooker* (1966), 69 Ill. App. 2d 6.) However, where the record is barren of evidence supporting the trial court's decision, a judgment based thereon cannot stand. (*Couri v. Couri* (1982), 103 Ill. App. 3d 445, 449.) For a judgment to be against the manifest weight of the evidence, it must appear that a conclusion opposite to that reached by the trier of fact is clearly evident. (*In re Application of Kane County Collector* (1985), 135 Ill. App. 3d 796, 805.) Mindful of that standard, we find that the trial court, under the facts and circumstances of the present case, erred in finding defendants' conduct contemptuous. The evidence adduced at the relevant hearings supports this conclusion.

■ In civil contempt proceedings, the burden is on the party charged to establish his inability to comply with the order and to show why he should not be held in contempt. (*People v. Mowery* (1983), 116 Ill. App. 3d 695, 702.) Further, civil contempt must be wilful, and the burden of proof is on the contemnor to negate this element. (116 Ill. App. 3d 695, 702.) At the hearing held on September 25, 1986, defendant testified as to why he had not produced the 1981 I.H.C. tractor, dual wheels, chisel plow, and several other implements.

■ Defendant testified that he had last seen the tractor, wheels, and chisel, which formed a unit, in late May 1986. He had left the machinery in a field and returned several days later to find the equipment gone. Defendant then testified that he had not reported the tractor missing because he thought the plaintiff had replevied the tractor. Also, he stated that embarrassment and pride kept him from following up on the apparent repossession of the collateral. Aware at the hearing that plaintiff did not have the tractor, defendant said that either it was stolen or a friend was hiding it, thinking that he was doing the defendant a favor. Defendant had talked with numerous people about the tractor, but none had any information about it. He had put an ad in the local paper asking for information as to its whereabouts. Defendant stated that he did not know the whereabouts of the missing collateral.

Defendant further testified that he received the replevin order on August 27, 1986, and then proceeded to make arrangements with the deputy sheriff and plaintiff's agents to gather the equipment or apprise the latter of the collateral's whereabouts. By September 8, 1986, a day prior to the rule to show cause hearing, defendant had either gathered the vast majority of the missing equipment or notified plain-

tiff's agents of its whereabouts. Only the disputed collateral was not tendered to plaintiff.

On cross-examination, defendant admitted that he had moved some of the collateral off his farm to make it more difficult to replevin the machinery. Defendant was asked why he put up strong opposition to the legal steps taken by plaintiff but did not take steps to bring the court's attention regarding the tractor's supposed replevin. Defendant responded that he did not believe it would do him any good and preferred to remain silent and let the CPCA tell him it had the tractor.

Defendant Doris Kruse testified that her husband told her the equipment was missing in late May or early June 1986. On cross-examination, Mrs. Kruse stated that the missing piece of equipment was the only machinery that had been left standing out away from their home and storage facilities during the year. Plaintiff produced no witnesses or other evidence to refute the defendants' testimony. The court found the defense witnesses were not credible. The court asserted that if the defendants had really thought the CPCA had replevied the missing collateral, the defendants would have brought that to the court's attention during the August 14, 1986, replevin hearing. It was the court's opinion that the defendants' theory regarding the missing machinery had been developed after the replevin hearing. As a consequence, the court ruled that the defendant had not purged himself of contempt and ordered him to be remanded to the sheriff's custody.

The defendant is a longtime resident of Carroll County. There were no allegations that he had any criminal record. Further, it is unrefuted that he turned over or caused to be turned over the bulk of the collateral. In a matter of this nature these facts bear strongly on the credibility of a witness. Also, contrary to the suppositions of the court, it is entirely plausible that the missing machinery was stolen from the Kruse farm in late May 1986.

The plaintiff's principal contention, which was adopted by the court, is that because defendant vigorously defended himself during the legal proceedings he, in order to be consistent, should have vigorously protected his apparently replevied tractor. This is an inference that we find tenuous. The alleged disappearance of the tractor took place after the initial complaint had been filed. The *pro se* defendants were likely unfamiliar with the relevant law and may well have believed that there was little they could do about the machinery's repossession. The fact that they have since zealously represented themselves does not lead to the conclusion that they were, in essence, lying

about the whereabouts of the missing collateral.

Following plaintiff's (and the court's) line of reasoning, it is just as plausible that defendant, if he were actually attempting to hide the missing collateral, would have concocted a story of theft and reported it to the sheriff to create a "record" of the equipment's disappearance. Here, we have no such careful machinations, only the defendant's statement that the equipment has been missing since late May 1986.

We find that the defendant came forward with sufficient evidence to explain the disappearance of the missing collateral, particularly in light of the fact that defendant had already surrendered the vast majority of the collateral. Plaintiff did not successfully rebut this evidence. Therefore, the trial court erred in finding that the defendant had not purged himself of civil contempt.

Additionally, we suggest that either purpose of contempt has apparently been exhausted. The defendant has been considerably punished by his two-month incarceration. The contempt order's coercive effect has waned significantly after the defendant's two-month incarceration.

Because of our decision on the first issue, we need not address the other two issues brought up on appeal. We do find, however, that defendant's due process rights were violated by the trial court's failure to make a written order finding the defendant in contempt.

■■■ The court must enter a written contempt order, and this order must set forth the grounds which support the finding of contempt. (*People ex rel. Woodward v. Oliver* (1975), 25 Ill. App. 3d 66, 75.) The written order must contain the facts, not merely the opinions or conclusions of the trial judge. (*People v. Miller* (1970), 130 Ill. App. 2d 637.) In the present case, the court's orally transmitted order of contempt was not sufficient notice to the defendant regarding the grounds of contempt and the facts in support thereof.

Accordingly, we reverse the order of the trial court and remand this action for further proceedings consistent with this opinion.

Reversed and remanded with directions to vacate the order finding the defendant in contempt.

HOPF and INGLIS, JJ., concur.