176 Ill. App.3d 153 (1988)
530 N.E.2d 1127
In re ESTATE OF E. DAVIS WERNICK (Samuel Wernick, Petitioner-Appellee,
v.
Mitchell C. Macks, Respondent-Appellant).
No. 87-2557.
Illinois Appellate Court  First District (1st Division).
Opinion filed November 7, 1988.
*154 *155 Steven F. Molo, of Winston & Strawn, of Chicago, for appellant.
Theodore M. Becker, J. Samuel Tenenbaum, and Claire T. Durkin, all of Becker & Tenenbaum, of Chicago, for appellee.
Judgment affirmed.
JUSTICE O'CONNOR delivered the opinion of the court:
Mitchell Macks appeals from a finding of contempt, issued on a motion for rule to show cause brought by the estate of E. Davis Wernick and the decedent's son, Samuel Wernick (Petitioners). For the reasons below, we affirm.
Mitchell Macks is an attorney, licensed to practice in Illinois. Macks' primary source of income for most of his career has come not from the practice of law, but from real estate investment and banking. In 1979, the petitioners brought citation proceedings in probate court against Macks to discover information concerning Macks' financial dealings with the decedent and to recover the decedent's interest in real estate allegedly converted by Macks. The probate case and citation proceedings were assigned to Cook County Circuit Court Judge Henry A. Budzinski.
*156 On November 16, 1982, while the citation proceedings were pending, Macks engaged in an ex parte communication with Judge Budzinski in the judge's chambers. On November 18, 1982, during a court proceeding with Macks on the witness stand, Judge Budzinski noted the incident and admonished Macks to not attempt ex parte communications again.
In May 1986 (the exact date is not specified), Macks again entered Judge Budzinski's chambers and engaged in an ex parte communication, concerning the renewal of a letter of credit that stood as Macks' appeal bond in the underlying case. Macks did not inform the petitioners or their attorneys of the contents of the ex parte communication, as required by Cook County Circuit Court Rule 17.2(b). Judge Budzinski informed the attorney for the executor of the Wernick estate that the communication had occurred. At the time, Judge Budzinski retained jurisdiction over certain matters in the underlying case.
On June 2, 1986, the petitioners moved for a rule to show cause why Macks should not be held in contempt. They also moved for a change of venue for the contempt hearing because Judge Budzinski would be called as a witness. A rule to show cause was issued against Macks on August 8, 1986, and the hearing on the motion was transferred to Judge Novoselsky. A hearing on an amended motion to show cause was held on February 18, 1987.
Judge Budzinski testified that although the communication had occurred, it had been in no way contumacious. Other evidence established the first ex parte communication and Judge Budzinski's admonishment. Macks did not testify on his own behalf. The trial court ruled that Macks had violated Cook County Circuit Court Rule 17 and found Macks guilty of indirect criminal contempt. After an aggravation and mitigation hearing, Macks was fined $500 and sentenced to 50 hours of community service. Macks appeals.
 1 Courts have inherent power to punish for contempt to maintain their authority and to administer and execute judicial power. (Central Production Credit Association v. Kruse (1987), 156 Ill. App.3d 526, 531, 509 N.E.2d 136.) The power to punish for contempt rests within the sound discretion of the trial court, and a determination of contempt will not be overturned absent a clear abuse of discretion. (Central Production Credit Association, 156 Ill. App.3d at 531.) An examination of the record shows that the court's ruling was a sound exercise of its discretion and that Macks' arguments to the contrary are without merit.
Macks first argues that the evidence was insufficient to support a finding of contempt, relying primarily on Judge Budzinski's testimony *157 to show that the communication did not violate Cook County Circuit Court Rule 17. Judge Budzinski testified that Macks' visit was in no way contumacious, but it is evident that he was interpreting Rule 17 to forbid only ex parte communications that attempted to influence the judge in a matter pending. Moreover, Judge Budzinski testified as a witness; therefore his interpretation of Rule 17.1, even if correct, was not controlling.
 2 Rule 17.1, enacted February 1, 1985, and in effect in May 1986, states, "No judge shall permit and no lawyer shall engage in ex parte communications unless allowed by law in connection with any matter pending before said judge." By its terms, Rule 17.1 forbids any ex parte communication without regard to whether or not it was intended to influence the judge in a pending matter. Rule 17.2 requires that the absent party be informed within two days, either in court or through a summary of the communication. Thus, it is relevant only that an ex parte communication occurred and that Macks failed to inform the petitioners.
The record categorically shows that Macks engaged in an ex parte communication. Judge Budzinski testified that an ex parte communication occurred in May 1986. Additionally, Macks made no attempt to inform the petitioners, as required by Circuit Court Rule 17.2. Further evidence shows that when Macks entered Judge Budzinski's chambers in May 1986, it was his second ex parte communication and that Macks had been admonished after the first. Macks engaged in ex parte communication in clear violation of the court's instruction to refrain from such action. The evidence amply supports the finding of contempt.
 3 Macks next argues that the trial court erred by not applying the "reasonable doubt" standard of proof in the contempt hearing, because the trial court based the contempt finding on violations of Circuit Court Rule 17 and Illinois Disciplinary Rules 1-102(a)(1) and (a)(5) (Ill. Rev. Stat. 1987, ch. 110A, foll. par. 774). Macks argues that because violations of the disciplinary rules are not proof per se of criminal contempt (see People v. Wolf (1987), 162 Ill. App.3d 57, 514 N.E.2d 1218, appeal denied (1988), 118 Ill.2d 551) and because Circuit Court Rule 17 is merely a codification of the disciplinary rules, the trial court's reliance on those violations to find guilt was misplaced. This argument is without merit.
In the instant case, Macks was not found guilty of contempt because he had violated any disciplinary or circuit court rules. Violation of Circuit Court Rule 17 merely established that Macks had engaged in an ex parte communication, which he had been admonished not to *158 attempt. The contempt was based not solely on violation of Circuit Court Rule 17, but on the admonishment after the first ex parte communication as well. Even had there been no rule violation, the evidence clearly established that Macks engaged in an ex parte communication, contrary to the court's admonishment, and even had the reasonable doubt standard not been applied, the evidence presented in the contempt hearing clearly met that standard.
Macks also argues that because counsel for the petitioners, opposing counsel in the underlying probate cause, prosecuted the contempt proceeding, Macks was deprived of due process and that having an interested prosecutor created an untenable conflict of interest. Both assertions are without merit.
 4 Macks argues that he was deprived of due process. Macks, however, was afforded every safeguard of due process. Macks had timely and sufficient notice of the proceeding. He was afforded a hearing on the merits of the issue before an impartial judge. He was given a second hearing on aggravation and mitigation. He enjoyed adequate and able representation at both hearings. He enjoyed the privilege against self-incrimination. All these safeguards were provided before any deprivation of liberty or property. Macks can make no tenable argument that he was deprived of due process.
 5, 6 Macks first raised the issue of whether the petitioners were interested "prosecutors" in his post-trial motion to dismiss. Where an issue is first raised in a post-trial motion, the reviewing court need only determine whether the trial court abused its discretion in denying the motion. (See Coleman v. Windy City Balloon Port, Ltd. (1987), 160 Ill. App.3d 408, 418-19, 513 N.E.2d 506, appeal denied (1988), 118 Ill.2d 541; Rahill Corp. v. Urbanski (1984), 123 Ill. App.3d 769, 777, 463 N.E.2d 765.) In the instant case, the ruling was based on substantial evidence, and the trial court considered the authorities presented by Macks in support of the motion. There was no abuse of discretion.
 7 Even if the issue of the interested prosecutor were considered on its merits, Macks cannot prevail. In Illinois, indirect criminal contempt proceedings may be instituted by private counsel. (Marcisz v. Marcisz (1976), 65 Ill.2d 206, 357 N.E.2d 477; 47th & State Currency Exchange, Inc. v. B. Coleman Corp. (1977), 56 Ill. App.3d 229, 371 N.E.2d 294, appeal denied (1978), 71 Ill.2d 598.) By labelling opposing counsel "prosecutors," Macks raised issues both inapplicable in the instant case and altogether absent: the appearance of unfairness, possible misrepresentation of facts, and the difficulty of having a "prosecutor" with a proprietary interest in the outcome of the contempt *159 hearing. Macks relies on Young v. United States ex rel. Vuitton et Fils. S.A. (1987), 481 U.S. 787, 95 L.Ed.2d 740, 107 S.Ct. 2124, which held that appointment of private counsel to prosecute a criminal contempt was reversible error where the private counsel was the direct beneficiary on the contempt order. In Young, as well as the other cases cited by Macks, the contemnors had ignored injunctions issued in the underlying case, which had been brought by the attorneys that ultimately prosecuted the contempt hearings. (See also Delaware v. Van Arsdall (1986), 475 U.S. 673, 89 L.Ed.2d 674, 106 S.Ct. 1431; Polo Fashions, Inc. v. Stock Buyers International, Inc. (6th Cir.1985), 760 F.2d 698, cert. denied (1987), 482 U.S. 905, 96 L.Ed.2d 373, 107 S.Ct. 2480.) Winning the contempt order meant enforcement of the injunction through extraordinary means, to the direct benefit of the party seeking the contempt.
In the instant case, however, the petitioners had no proprietary interest in the outcome of the contempt hearing. The contempt ruling was issued not to enforce compliance with orders in the underlying case, but to penalize noncompliance, and enforce future compliance, with the prescribed rules of court procedure. The petitioners filed the motion for rule to show cause upon which the hearing was held, and as the moving parties, they appropriately presented their motion at the hearing. They had no proprietary interest in the outcome of the contempt hearing; therefore, no conflict of interest arose.
 8 Macks also asserts that the petitioners violated Illinois Disciplinary Rule 7-105, which prohibits the threat of criminal proceedings to gain an advantage in a civil matter. Petitioners asked for further prosecution against Macks for perjury, when Macks admitted in the aggravation and mitigation hearing that he had engaged in ex parte communication. Rule 7-105 is inapplicable, however, to a situation where, as in the instant case, one party petitions the court to enforce the procedural rules by means of appropriate sanctions.
 9 Finally, it should be noted that the power to impose contempt is extraordinary and should be limited to extreme circumstances. (Central Production Credit Association v. Kruse (1987), 156 Ill. App.3d 526, 531, 509 N.E.2d 136.) Macks' behavior throughout the contempt hearing and the underlying case makes abundantly clear that the instant case is one of extreme circumstances. As a witness in the underlying probate proceeding, Macks was repeatedly evasive in answering questions, disrespectful to the court, withheld evidence, and at one point while on the witness stand called opposing counsel a "schmuck." Macks continued such behavior despite repeated warnings.
*160 As a witness in the aggravation and mitigation hearing, Macks' demeanor was not much better. Before imposing sanctions, the trial court, weighing Macks' demeanor and conduct before the court against the testimony of witnesses testifying in mitigation, stated, "[I]t seems as if the witnesses testifying in mitigation were discussing another individual, not the individual on trial. He may be a charitable, loving father, a pillar of his synagogue, but [he is] also an individual who has no regard or respect of rules of the court or attorneys' conduct." Macks' behavior demonstrated, if not epitomized, the extreme circumstances in which a contempt finding is warranted.
In summary, Mitchell Macks was found guilty of contempt by overwhelming evidence showing that, after having been admonished for having engaged in ex parte communication with Judge Budzinski, Macks engaged in a second ex parte communication. The trial court applied the proper standard of proof in the contempt hearing, and the hearing, being on a motion by the opposing counsel in the underlying case, was properly conducted by that counsel. Further, Macks enjoyed every due process safeguard. The trial court's finding of contempt was within the scope of its sound discretion, and the sanctions imposed were proper. The finding of contempt is therefore affirmed.
Affirmed.
MANNING and QUINLAN, JJ., concur.