Leo I. REESE, Plaintiff,

v.

Officer Charles MAY, Star No. 354, the Village of Glendale Heights, Illinois Police Department, sued in his individual capacity, and as an agent, servant and/or employee of the Village of Glendale Heights, Illinois, a municipal corporation, and Detective J. Eageny, Star No. 348, of the Village of Glendale Heights, Illinois Police Department, sued in his individual capacity, and as an agent, servant and/or employee of the Village of Glendale Heights, Illinois, a municipal corporation, and the Village of Glendale Heights, Illinois, a municipal corporation, Defendants.

No. 96 C 2683.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 20, 1996.

Mark W. Solock, Chicago, IL, for Leo I. Reese.

James L. DeAno, Norton, Mancini, Argentati, Weiler & DeAno, Wheaton, IL, Jennifer H. Lee, Norton, Mancini, Argentati, Weiler & DeAno, Chicago, IL, for Charles May, J. Eageny and Village of Glendale Heights, IL.

## MEMORANDUM AND ORDER

MORAN, Senior District Judge.

Plaintiff Leo Reese (Reese) brought this action against defendants Officer Charles May (May), Detective J. Eageny (Eageny), and the Village of Glendale Heights, Illinois (Village), claiming that he was arrested and detained for the unlawful possession of an altered driver's license in violation of his rights under federal and state law. Count I of the complaint seeks compensatory and punitive damages for the defendants' actions, which allegedly violated the plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983. Counts II and III seek compensatory and punitive damages for the defendants' actions, which allegedly constituted the torts of false arrest, false imprisonment, and malicious prosecution under Illinois state law. The defendants now move to strike plaintiff's prayer for punitive damages from Counts II and III of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Specifically, defendants claim that they are immune from liability for punitive damages under the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/2–102 and 10/2–213. For the reasons stated herein, defendants' motion is granted.

## FACTS

In considering a motion to dismiss under Fed. R.Civ. P. 12(b)(6) for failure to state a claim, we accept all well pled factual allegations in the complaint as true and draw all reasonable inferences from these facts in favor of the plaintiff. *Travel All Over the World, Inc. v. The Kingdom of Saudi Arabia,* 73 F.3d 1423, 1429 (7th Cir.1996). Read in this light, the facts are as follows.

On February 16, 1995, Reese was driving his car in the Village of Glendale Heights, Illinois. He was stopped by Officer May at the intersection of Glen Ellyn Road and Gregory Avenue and charged with the improper display of registration and the operation of an uninsured motor vehicle. In response to May's request, Reese produced his Illinois driver's license (No. R200–5295–6190), upon which appeared Reese's full name and photograph. May then seized Reese's driver's license, claiming that he suspected it had been altered. On March 14, 1995, May went to Reese's place of employment at the Carol Stream Postal Facility and confirmed that the seized license contained no false information concerning Reese's identity.

Nevertheless, on March 16, 1995, Detective Eageny was assigned by the Village of Glendale Heights Police Department to conduct a followup investigation of Reese's allegedly altered driver's license. On May 5, 1995, Eageny appeared before the Honorable Cary B. Pierce of the Circuit Court of the 18th Judicial Circuit, Dupage County, Illinois, and under oath signed a written complaint (No. 95 TR 60314) alleging that Reese had committed the offense of unlawful possession of an altered driver's license in violation of the Illinois Vehicle Code, 625 ILCS 5/6–

301.1(b)(1).[1] Eageny did not inform the judge that May's investigation had revealed no indication that the license was "fictitious" or "unlawfully altered," as those terms are defined under the statute.[2] Judge Pierce, on the basis of the information provided by Eageny, issued an arrest warrant for Reese.

On May 6, 1995, officer Kedzie of the Broadview, Illinois Police Department arrested Reese pursuant to the warrant. Reese initially spent time in the custody of the Broadview Police Department and was then transported to the Village of Glendale Heights Police Department, where he was further detained. Reese was released on bond the same day he was arrested.

■ On December 8, 1995, Reese's criminal case was dismissed by the State's Attorney of DuPage County, Illinois, after Reese filed a motion to dismiss the complaint for failure to state an offense. Reese then brought the instant action alleging that the acts of the defendants were done in violation of his rights under the United States Constitution and the common law of the State of Illinois. The defendants now move to dismiss the punitive damage claims from plaintiff's state law counts.[3]

## DISCUSSION

### I. Standard of Review

■ A motion to dismiss tests the sufficiency of a complaint, not it merits. *Triad Associates, Inc. v. Chicago Housing Authority*, 892 F.2d 583, 586 (7th Cir.1989), *cert. denied*, 498 U.S. 845, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990). The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. *Gray v. County of Dane*, 854 F.2d 179, 182 (7th Cir. 1988). A complaint need not set out any legal theory; an incorrect legal theory is not

---

1. 625 ILCS 5/6–301.1(b)(1) reads as follows:

   (b) It is a violation of this Section for any person:
   1. To knowingly possess, display or cause to be displayed any fictitious or unlawfully altered driver's license or permit.
   Reese alleges that the complaint charged him with the unlawful possession of an altered driver's license, while the statute explicitly criminalizes only the knowing possession of an unlawfully altered license.

2. A "fictitious driver's license or permit" means "any issued license or permit . . . which contains false information concerning the identity of the individual issued the license or permit." 65 ILCS 5/6–301.1(a)(1). An "unlawfully altered driver's license or permit" means "any issued license or permit . . . which has been physically altered or changed in such a manner that false information appears upon the license or permit." 65 ILCS 5/6–301.1(a)(3). "False information" means "any information concerning the name, sex, date of birth, social security number or any photograph that falsifies ah or in part the actual identity of the individual issued the license or permit." 65 ILCS 5/6–301.1(a)(2).

3. Defendants assert a second basis for dismissal of the state law claims in their memorandum in reply to plaintiff's response to motion to strike. First, they argue that plaintiff's false imprisonment claim should be dismissed since the restraint on Reese's liberty was the result of a formal legal process (def. reply, at 3). However, as plaintiff has properly alleged that the restraint was without probable cause, we find that he has sufficiently stated a cause of action for the purposes of this motion to dismiss. *Martel Enterprises v. City of Chicago*, 223 Ill.App.3d 1028, 164 Ill.Dec. 945, 949, 584 N.E.2d 157, 161 (1991). Second, defendants argue that the false arrest portion of Count II should be dismissed as duplicative of the malicious prosecution claim of Count III. This argument is flatly rejected. To state a claim for malicious prosecution under Illinois law, it must be alleged that (1) the plaintiff was subjected to a judicial proceeding for which there was no probable cause, (2) the defendants instituted the proceedings maliciously, (3) the proceedings were terminated in plaintiff's favor, and (4) there was injury. *Treece v. Village of Naperville*, 903 F.Supp. 1251, 1257 (N.D.Ill. 1995). The essential elements of a cause of action for false arrest are that plaintiff was arrested by defendants and that defendants acted without having reasonable grounds to believe that an offense was committed by plaintiff. *Meerbrey v. Marshall Field & Co.*, 139 Ill.2d 455, 151 Ill.Dec. 560, 569, 564 N.E.2d 1222, 1231 (1990). Clearly, these two causes of action require different showings. Therefore, because plaintiff has alleged sufficient facts in support of both the false arrest and malicious prosecution claims, we decline to dismiss either as unnecessarily duplicative.

fatal. *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir.1992).

## II. *Punitive Damages Claims under the Tort Immunity Act*

In their motion to dismiss defendants argue that plaintiff's punitive damage claims in Counts II and III of the complaint must be stricken since they are barred by the Illinois Tort Immunity Act.

■ As defendants correctly point out, because May and Eageny are both local government employees their tort liability is governed by the Act. *West v. Kirkham*, 147 Ill.2d 1, 167 Ill.Dec. 974, 976, 588 N.E.2d 1104, 1106 (1992).[4] The purpose of the Act "is to protect local public entities and public employees from liability arising from the operation of government." 745 ILCS 10/1–101.1. However, the Act does not confer blanket immunity from all tort claims against local government entities. Under the Act, local government entities and their employees are liable in tort unless immunized based on specific governmental functions enumerated in the Act. *Eck v. McHenry County Public Building Comm'n*, 237 Ill.App.3d 755, 178 Ill.Dec. 586, 591, 604 N.E.2d 1109, 1114 (1992). The Illinois Supreme Court has noted that the Act "is an attempt to create certain uniform rules of immunity as exceptions to the general rule of municipal liability." *Aikens v. Morris*, 145 Ill.2d 273, 164 Ill.Dec. 571, 574, 583 N.E.2d 487, 490 (1991). Because the Act is in derogation of the common law, it must be strictly construed against local government entities. *Curatola v. Village of Niles*, 154 Ill.2d 201, 181 Ill.Dec. 631, 634, 608 N.E.2d 882, 885 (1993).

■ Defendants cite two provisions of the Act in support of their argument that they are immune from punitive damages claims. First, they assert that they are not liable for punitive damages under § 2–102 of the Act, which states in relevant part as follows:

[N]o public official is liable to pay punitive or exemplary damages in any action aris-

ing out of an act or omission made by the public official while serving in an official executive, legislative, quasi-legislative or quasi-judicial capacity, brought directly or indirectly against him by the injured party or a third party.

745 ILCS 10/2–102. This section establishes two criteria that must be satisfied in order to confer immunity upon local government actors against punitive damage claims: (1) the defendants must be "public officials" within the meaning of the statute, and (2) they must have been serving in an "official executive, legislative, quasi-legislative or quasi-judicial capacity" when they engaged in the actions that allegedly resulted in the plaintiff's injury.

The Illinois Tort Immunity Act does not provide a definition of "public official" for the purposes of determining immunity under § 2–102. Furthermore, courts have offered scant interpretive guidance on this issue. This is unfortunate since § 2–102 is not a model of clarity as it contains both intricate common law concepts and language which overlaps substantially with other sections of the Act. *See,* 745 ILCS §§ 2–201 and 2–213. In light of this ambiguity, we find it necessary to look to the statutory history of § 2–102 and to the relationship between that section and related provisions of the Act in analyzing whether the defendants are entitled to immunity from punitive damages.

The Tort Immunity Act was passed in 1965, in response to the Illinois Supreme Court's decision in *Molitor v. Kaneland Community Unit District No. 302*, 18 Ill.2d 11, 163 N.E.2d 89 (1959), which abrogated tort immunity for school districts. The 1965 Act contained the original version of § 2–102, which did not include the "public official" language at issue in this case. Instead, the 1965 version of § 2–102 simply provided that "[a] local public entity is not liable to pay punitive or exemplary damages." Ill.Rev. Stat.1965, ch. 85, § 2–102. It is significant that the original act also contained ¶ 2–201, which conferred blanket immunity against

---

4. In his complaint Reese seeks punitive damages from defendants May and Eageny under Count II (false arrest and imprisonment) and Count III (malicious prosecution). Reese does not seek

punitive damages for the actions attributable to the Village and therefore defendants' motion to strike on behalf of the Village is moot.

any form of liability upon public employees engaged in discretionary duties. Specifically, § 2–201 provided that "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." Ill.Rev.Stat., Ch. 85, ¶ 2–201. This section has been held to incorporate the common law of public official immunity. *Horton v. City of Ottawa*, 40 Ill.App.3d 544, 352 N.E.2d 23, 24 (1976). Therefore, for purposes of our analysis it is relevant to note that the Illinois legislature in 1965 enacted a Tort Immunity Act which simultaneously provided two distinct forms of immunity: (1) local public entities were immunized from punitive damages liability under § 2–102, and (2) public employees who qualified as public officials under the common law rules were entitled to complete immunity against both compensatory and punitive damages pursuant to § 2–201.

In 1976, the court in *Newell v. City of Elgin*, 34 Ill.App.3d 719, 340 N.E.2d 344, 349 (1976), held that the original version of § 2–102 did not immunize individual police officers against punitive damages liability for allegedly abusive behavior, although it did immunize the municipality that employed the officers. Plaintiff relies on this case in support of the proposition that § 2–102 only provides immunity to local public entities and public officials, and therefore does not provide immunity to May and Eageny, since they are merely public employees. Specifically, plaintiff argues that *Newell* demonstrates that individual police officers, such as defendants in this case, are liable for punitive damages under the act as "public employees." However, we find this reading of *Newell* and § 2–102 erroneous. As noted above, *Newell* was decided based on the application of the original version of § 2–102, which did not include immunity for "public officials." Following the *Newell* decision, § 2–102 was amended in 1986 to its current form, which explicitly immunizes "public officials" against punitive damages claims. Based on this sequence of events, one court has stated that the "amended language was intended to prohibit punitive damage claims

against municipal officers in both their official and individual capacities.... Had the legislature intended to permit punitive damages based on state law claims against public officers in their individual capacities, it would have done so." *Holmes v. Village of Hazel Crest*, No. 92–C–5979, 1993 WL 155500, at *3 (N.D.Ill. May 10, 1993). We agree that the amended version of § 2–102 broadens the scope of municipal immunity to encompass individual officers and effectively nullifies the *Newell* decision insofar as it held that former § 2–102 did not immunize police officers from punitive damages liability. Plaintiff's use of *Newell* to argue against § 2–102 immunity here is therefore unavailing.

■ However, while this historical analysis supports an expansive reading of § 2–102 protection, it does not aid us in precisely delimiting the parameters of "public official" status. In order to determine whether defendants in this case qualify as "public officials," we need to read the amended version of § 2–102 in the context of § 2–201, which codifies the common law of public official immunity. According to the common law, a public official is entitled to immunity where his conduct is a good faith exercise of discretionary, rather than ministerial, duties, *Mora v. State of Illinois*, 68 Ill.2d 223, 12 Ill.Dec. 161, 166, 369 N.E.2d 868, 873 (1977); *Thiele v. Kennedy*, 18 Ill.App.3d 465, 309 N.E.2d 394, 396 (1974), and where the discretionary duties in question are uniquely related to the official's particular public office. *Currie v. Lao*, 148 Ill.2d 151, 170 Ill.Dec. 297, 303–04, 592 N.E.2d 977, 983–84 (1992). However, the common law rule of public official immunity does not extend to a public employee's acts based on corrupt or malicious motives, or a public employee's wilful and wanton conduct. *Barth ex rel. Barth v. Board of Educ.*, 141 Ill.App.3d 266, 95 Ill.Dec. 604, 608, 490 N.E.2d 77, 81 (1986).

■ The question we must answer, then, is whether § 2–102's reference to "pubic official" incorporates the common law of public official immunity. We find that it does not. As we discussed above, § 2–201 was enacted in 1965 concurrently with the original version of § 2–102. When the Illinois legislature

amended § 2–102 in 1986 to include immunity for public officials against *punitive damages,* it could not have meant to replicate the broad public official immunity against *compensatory and punitive* damages already provided for in § 2–201. To construe the public official language in § 2–102 as conferring immunity identical to the common law doctrine would render that section redundant and superfluous within the context of the Tort Immunity Act, in violation of fundamental rules of statutory construction. *Kraft v. Edgar,* 138 Ill.2d 178, 149 Ill.Dec. 286, 291, 561 N.E.2d 656, 661 (1990).

■ Therefore, § 2–102 must be construed in a way that invests it with a significance that is independent of § 2–201. We interpret "public official" in § 2–102 to mean a public employee who exercises discretion in the performance of uniquely governmental functions. We decline to interpolate a "willful and wanton" exception into this definition, as that would make § 2–102 superfluous in light of the broader immunity provided for public officials under § 2–201. In doing so we are mindful that the 1986 amendment was but one provision of Public Act 84–1431, "An Act in relation to the insurance crisis," which was in large part directed toward reducing the tort vulnerability of public entities and public employees.

■ In determining whether defendants are "public officials" under § 2–102, our inquiry, then, is whether defendants May and Eageny were engaged in the performance of uniquely governmental functions which involved discretionary duties, during their investigation and prosecution of Reese. Defendants argue that Officer May's decision to provide information to Detective Eageny regarding plaintiff's allegedly altered driver's license, and Eageny's decision to use that information as the basis for signing a written complaint charging plaintiff with the crime, were discretionary acts which place defendants squarely within the scope of public official immunity. Illinois courts have attempted to distinguish discretionary duties that involve the exercise of judgment as to the propriety of the acts, from ministerial duties, which are performed in a prescribed manner and in obedience to the mandate of

legal authority. *Long v. Friesland,* 178 Ill. App.3d 42, 127 Ill.Dec. 85, 92, 532 N.E.2d 914, 921 (1988), *appeal denied,* 125 Ill.2d 566, 130 Ill.Dec. 482, 537 N.E.2d 811 (1989). However, the definition of what constitutes a discretionary duty "has been stretched and pulled to fit individual cases to the point that the [public official] immunity applies to the exercise of any governmental function, rather than a discretionary, nongovernmental function. . . ." *Oppe v. State of Missouri,* 171 Ill.App.3d 491, 121 Ill.Dec. 882, 885, 525 N.E.2d 1189, 1192 (1988), *appeal denied,* 176 Ill.App.3d 153, 125 Ill.Dec. 718, 530 N.E.2d 1127 (1993). Consistent with this expansive definition, the defendants in this case were clearly engaged in discretionary acts uniquely related to their particular government offices. Officer May's decisions to seize Reese's driver's license and investigate its authenticity required an exercise of judgment regarding the veracity of the information contained in the license. Detective May's decision to sign a criminal complaint charging Reese with the unlawful possession of an altered driver's license required a discretionary determination that the information he received regarding the license was sufficient to constitute probable cause to arrest Reese.

■ Further, we find that defendants' conduct in investigating the crime and attesting to probable cause involved a greater degree of discretion than other police activities held to be cloaked with public official immunity. *See Holmes,* 1993 WL 155500, at *3 (holding that municipal police officers charged with various state law torts for allegedly battering a woman were immune from punitive damages as public officials under § 2–102); *Magnuson v. Cassarella,* 813 F.Supp. 1321, 1324 (N.D.Ill.1992) (holding that public official immunity under Illinois law applies to police officer accused of assaulting plaintiff in the course of a domestic disturbance investigation); *Oppe,* 121 Ill.Dec. at 885, 525 N.E.2d at 1192 (holding that public official immunity applies to police officers who caused a collision during a high-speed chase); *but see Currie,* 144 Ill.Dec. at 856, 556 N.E.2d at 323 (holding that police officers engaged in a vehicular chase were

not entitled to public official immunity).[5] Both May and Eageny were clearly exercising discretion in performing the uniquely governmental functions associated with their police duties. Therefore, both were acting as "public officials" for the purposes of § 2–102.

Having concluded that May and Eageny are "public officials" under § 2–102, it remains for us to determine whether they were also serving in an "official executive, legislative, quasi-legislative or quasi-judicial capacity" when they investigated and prosecuted Reese. The defendants argue that their actions were "quasi-judicial" in nature since they involved the exercise of discretion. However, we cannot facilely equate quasi-judicial functions with discretionary actions for the purposes of construing § 2–213. To do so would render the phrase "quasi-judicial function" superfluous, in violation of established rules of statutory construction. *Kraft,* 149 Ill.Dec. at 291, 561 N.E.2d at 661. It is true under Illinois common law that a judicial officer who exercises powers that are "so far discretionary that he can exercise or withhold them according to his own judgment as to what is necessary and proper," is immunized from liability under the doctrine of quasi-judicial immunity. *People ex rel. Munson v. Bartels,* 138 Ill. 322, 27 N.E. 1091, 1092 (1891). However, in this case neither defendant is a judicial officer. Therefore, we find that defendants did not engage in "quasi-judicial" functions simply by virtue of the fact that their police duties involved an exercise of discretion. Instead, in order to determine whether May and Eageny performed quasi-judicial functions, we must ask whether their activities were functionally analogous to activities regularly performed by judicial officers.

Although not controlling in this case, the federal law of quasi-judicial immunity sets forth a useful standard for determining the scope of a public employee's quasi-judicial function. The Supreme Court has granted absolute immunity to officials, such as administrative law judges and federal and state prosecutors, in the performance of functions that are "closely associated with the judicial process." *Cleavinger v. Saxner,* 474 U.S. 193, 200, 106 S.Ct. 496, 500, 88 L.Ed.2d 507 (1985). In each case, the analysis has proceeded not from the official's rank or title but from the nature of his responsibilities. "Thus, where the official's responsibilities are closely analogous to the adjudicative functions of a judge, or are 'intimately associated' with the judicial process itself, that official has been granted absolute immunity from suit for actions taken to fulfill those particular responsibilities." *Walrath v. United States,* 35 F.3d 277, 281 (7th Cir.1994) (internal citations omitted). Quasi-judicial functions are distinguished from investigative or administrative actions such as those normally performed by police officers for which only qualified immunity applies. *Hampton v. City of Chicago,* 484 F.2d 602, 608 (7th Cir. 1973), *cert. denied,* 415 U.S. 917, 94 S.Ct. 1413, 1414, 39 L.Ed.2d 471 (1974); *see also Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 2615–16, 125 L.Ed.2d 209 (1993) (finding that prosecutor is not absolutely immune from suit when he performs administrative or investigative functions, but only when he acts as an advocate of the state); *Burns v. Reed,* 500 U.S. 478, 491–93, 111 S.Ct. 1934, 1941–43, 114 L.Ed.2d 547 (1991) (finding that a prosecutor is entitled to judicial immunity only for actions connected·

**5.** Reese contends that defendants acted "maliciously, willfully wantonly" (compl. ¶ 22) by proceeding with their investigation and prosecution of Reese, when they knew that there was no evidence substantiating the charge. Because the allegations contained in Counts II and III, along with the reasonable inferences they support, suggest that defendants acted in bad faith in pursuing the prosecution and arrest of Reese, they suffice to preclude a finding of public official immunity from compensatory damage. *See Reiter v. Sears Roebuck & Co.,* 1996 WL 459852, *12 (N.D.Ill. Aug. 13, 1996) (holding that plaintiff's allegation that police officer acted with a willful

and wanton disregard of his rights, precluded dismissal of the claim on the basis of public official immunity); *Archilla v. Manley,* 1994 WL 163854, *1 (N.D.Ill. April 29, 1994) (holding that defendant police officers charged with assault and battery were not entitled to public official immunity where plaintiff alleged that the officers' conduct was wilful, wanton, and malicious). We note that this allegation is sufficient to state a claim for *compensatory* damages under § 2–201, as public official immunity under that provision is subject to the common law rule that the government employee must exercise his discretion in good faith.

to judicial proceedings, not for his role in investigation).

It is clear that May and Eageny were engaged in investigative and administrative actions, not quasi-judicial functions. Officer May's only involvement in Reese's arrest was his initial stop of Reese and his subsequent investigation of the authenticity of Reese's driver's license. These activities fall squarely within the scope of a police officer's daily enforcement and investigative duties and lack the close connection to the judicial process to constitute quasi-judicial functions. Further, Detective Eageny's appearance before the court to sign the criminal complaint, while more closely tied to the judicial process, was not a quasi-judicial activity. "There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other." *Buckley,* 509 U.S. at 273, 113 S.Ct. at 2616. By attesting to the existence of probable cause to issue an arrest warrant, Eageny was performing a routine administrative function that lacked sufficient indicia of prosecutorial conduct to warrant our finding that he was engaged in a quasi-judicial function.

However, § 2–102 also immunizes public officials serving in an "executive" capacity. A police officer who is endowed by executive authority with the power to effectuate and enforce the law, clearly acts in an "executive" capacity. Officer May acted in an executive capacity when he pulled Reese over for violating Illinois law requiring the display of effective registration, and when he seized Reese's license under the suspicion that it was unlawfully altered. He further acted in his executive capacity when he investigated the validity of Reese's license, thereby facilitating the administration of the law. Similarly, Detective Eageny's investigative and prosecutorial activities were within the scope of his executive functions.

Therefore, because both May and Eageny acted as "public officials" serving in "executive" capacities during the investigation and arrest of Reese, we grant defendants' motion to dismiss the punitive damages claims in Counts II and III on the basis of § 2–102 of the Tort Immunity Act.

As a second basis for their immunity claim, defendants rely on § 2–213 of the Tort Immunity Act, which provides as follows:

Notwithstanding any other provision of law, a public employee is not liable to pay punitive or exemplary damages in actions brought against the employee based on an injury allegedly arising out of an act or omission occurring within the scope of employment of such an employee serving in a position involving the determination of policy or the exercise of discretion when the injury is the result of an act or omission occurring in the performance of any legislative, quasi-legislative or quasi-judicial function, even though abused.

745 ILCS 10/2–213. As we find that defendants are immune from plaintiff's punitive damages claims under § 2–102, there is no need to determine the applicability of § 2–213. However, we do note that our reading of § 2–102 does not render it wholly duplicative of § 2–213. Section 2–213 confers immunity upon public employees exercising discretion or determining policy during the "performance of any *legislative, quasi-legislative* or *quasi-judicial* function, even though abused" (emphasis added). We read § 2–102 as conferring immunity upon public employees who exercise discretion in the performance of uniquely governmental functions while serving in an "official *executive, legislative, quasi-legislative* or *quasi-judicial capacity* ..." (emphasis added). While there is obvious and unnecessary redundancy, the two sections can be construed as applying to slightly different categories of public actors. For instance, § 2–102 applies to public employees acting in an "executive" capacity, whereas § 2–213 does not. Also, § 2–213 confers immunity on two distinct classes of public employees: those who exercise discretion *or* those who determine policy, while § 2–102's coverage is simply confined to actors who exercise discretion. *See In re Chicago Flood Litigation,* N. 93–C–1214, 1993 WL 278553, at *5 (N.D.Ill. July 20, 1993) (finding that § 2–213 immunizes government

employees for injuries resulting from acts in determining policy *or* when acting in the exercise of discretion).

Moreover, both sections were enacted pursuant to a 1986 omnibus public act designed to reduce the financial liability and insurance costs of municipal entities. Ill.P.A. 84–1431 (Approved 1986). It is clear that the Illinois legislature intended to protect municipal coffers from depletion due to lawsuits aimed directly at the municipality itself and at municipal employees. Because our reading of § 2–102 as providing immunity to defendants May and Eageny is consistent with this clear policy goal, we find that our interpretation of § 2–102 is most plausible within the context of the overall tort immunity scheme, despite the substantial overlap with § 2–213.

### CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the punitive damages claims is granted.