# Illinois Official Reports

## Appellate Court

> *Nolan v. Hearthside Homebuilders, Inc.*, 2020 IL App (1st) 182492

| | |
|---|---|
| Appellate Court Caption | KATHARINE M. NOLAN and MICHAEL NOLAN, Plaintiffs and Citation Petitioners-Appellants, v. HEARTHSIDE HOMEBUILDERS, INC., a Corporation, Defendants (Terrence P. Kunes a/k/a Terry Kunes, Citation Respondent-Appellee). |
| District & No. | First District, Second Division<br>No. 1-18-2492 |
| Filed | August 11, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2014-L-7252; the Hon. Alexander P. White and the Hon. Thomas More Donnelly, Judges, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Ernest T. Rossiello, of Chicago, for appellants.<br><br>Francis J. Leyhane III, of Leyhane & Associates, Ltd., of Chicago, for appellee. |

Panel                      JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Coghlan concurred in the judgment and opinion.

## OPINION

¶ 1      This appeal arises from supplementary proceedings in which judgment creditors Katharine M. Nolan and Michael Nolan sought to enforce a $250,000 judgment against judgment debtor Hearthside Homebuilders, Inc. (Hearthside). As permitted by section 2-1402 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1402 (West 2012)), the Nolans filed a citation to discover assets against third-party citation respondent Terrence P. Kunes, who was Hearthside's president and sole shareholder, thus bringing Kunes into the case for purposes of this appeal. Three judges consecutively presided over the supplementary proceedings, whom we will refer to as Judge 1, Judge 2, Judge 3, and Judge 4 chronologically. Toward the beginning of the proceedings, Judge 1 ordered Hearthside to file a sworn answer regarding certain properties owned by Hearthside. However, Hearthside filed no such answer as ordered. Rather, Kunes submitted an affidavit describing those properties directly to the Nolans but never filed the affidavit himself. The Nolans brought a motion for sanctions against Kunes and his counsel, alleging that Kunes's affidavit contained false information regarding Hearthside's property.

¶ 2      After years of litigation, Judge 1 granted the sanctions motion against Kunes and his counsel. That judge retired. Judge 3 eventually presided over the case and vacated the decision to impose sanctions, reasoning that Illinois Supreme Court Rule 137 (eff. July 1, 2013) only applied to pleadings and documents filed with the court and that Kunes never filed his affidavit directly to the court. On appeal, the Nolans argue that Judge 3 erred in vacating Judge 1's decision to impose sanctions. We affirm.

¶ 3                                    BACKGROUND

¶ 4      On August 26, 2010, the Nolans filed a complaint in the law division of the circuit court of Cook County, naming Hearthside, Kunes, and A. C. Drywall & Taping Company (A. C. Drywall) as defendants. The Nolans alleged that general contractor Hearthside conveyed a piece of real property to the Nolans and that Hearthside subcontracted with A. C. Drywall in constructing a single-family residence on the property. The allegedly negligent construction of the residence's drywall caused the Nolans' clothes dryer vent elbow to disconnect from the ventilation system. As a result, water and moisture from the clothes dryer was trapped inside the residence, and a toxic black mold infested the area within the drywall between the pantry and laundry room, as well as the atmosphere of the family room. The Nolans further alleged that Kunes made misrepresentations of material fact to induce the Nolans to purchase the property. The Nolans requested relief in the sum of $100,000 in actual damages, plus prejudgment interest, punitive damages, and attorney fees and costs.

¶ 5      On October 7, 2010, an attorney from James J. Roche & Associates (JR&A) filed an appearance on behalf of "the defendants," listing Hearthside as the litigant. On September 19, 2011, the Nolans voluntarily dismissed the action. However, on July 19, 2012, they moved to

reinstate it, stating that the case had been dismissed due to their attorney's inability to prosecute the case while suspended from practice by the Illinois Supreme Court. On September 6, 2012, the case was reinstated as to Hearthside only. A. C. Drywall and Kunes were not brought back into the case as defendants.

¶ 6        Later, on October 23, 2012, JR&A withdrew as counsel for Hearthside, stating that Hearthside failed to pay attorney fees and consented to the firm's withdrawal. On January 24, 2013, the circuit court entered default judgment in favor of the Nolans and against Hearthside in the amount of $250,000.

¶ 7        Supplementary proceedings then commenced to enforce the $250,000 judgment against Hearthside before Judge 1 in the tax and miscellaneous section of the law division of the circuit court of Cook County. On February 6, 2013, the Nolans filed citations to discover assets against Hearthside, Kunes, and other third parties, who were to appear in court on March 7, 2013.[1] We note that section 2-1402 permits a judgment creditor to file a citation to discover assets against a third party, where the third party may possess assets belonging to the judgment debtor. See *National Life Real Estate Holdings, LLC v. Scarlato*, 2017 IL App (1st) 161943, ¶ 31. Thus, the Nolans were permitted under section 2-1402 to issue a citation as to Kunes to discover any assets belonging to Hearthside that Kunes possessed. The citation against Kunes in particular stated that Kunes was "COMMANDED to appear" before Judge 1 "on March 7, 2013, at 9:30 a.m. to be examined under oath to discover assets or income not exempt from enforcement of a judgment."

¶ 8        On February 26, 2013, JR&A filed an appearance on Hearthside's behalf. That same day, JR&A filed a separate appearance on behalf of the third-party respondents but circled the names of each of the third party respondents except Kunes's name. It is undisputed that Kunes did not appear in person on March 7, 2013, to be examined as to the property of the Hearthside, as the citation commanded.

¶ 9        Also on February 26, 2013, JR&A filed a motion to quash citations on behalf of Kunes and the third-party respondents, alleging that the judgment was only entered against Hearthside and so Kunes and the third-party respondents were not judgment debtors. Based on this fact, JR&A asserted that the Nolans could not seek the third-party respondents' personal information, such as personal income tax returns.

¶ 10       On April 4, 2013, the Nolans filed notices to produce Kunes on May 8, 2013, for examination under oath "regarding the assets and indebtedness due [Hearthside]." Again, it is undisputed that Kunes did not personally produce himself on this date. On April 8, 2013, JR&A submitted an emergency motion to quash, again alleging that the default judgment was not entered against Kunes and that the Nolans were improperly seeking Kunes's personal information.

¶ 11       On April 9, 2013, the circuit court entered an order converting the motions to quash to objections and permitted the Nolans to file responses to the objections.

¶ 12       In response to Kunes's objections, the Nolans asserted that, as the judgment creditors, they stood in Hearthside's shoes and could recover assets from any third parties who owed

---

[1]The record shows that shortly after this time, on March 26, 2013, the Nolans filed a separate action against Kunes in the chancery division of the circuit court of Cook County, for the involuntary dissolution of Hearthside to pierce the corporate veil and hold Kunes personally liable for the default judgment against Hearthside. The Nolans voluntarily dismissed this case on August 6, 2015.

Hearthside money, including Kunes. The Nolans alleged that Hearthside failed to appear pursuant to the citation on March 7, 2013. However, after a rule to show cause was issued and subsequently discharged, Hearthside appeared on March 20, 2013, "with two large red folders of virtually useless documents." Hearthside produced the past five years of corporate income tax returns but failed to produce "records related to the value, description and location of the model homes and vehicles they claimed as inventory on their income tax returns and balance sheets." The Nolans questioned where Hearthside put its assets, when Hearthside reported to the Internal Revenue Service that it had $1,365,053 in assets in 2011 but only reported $850,000 in assets in 2012.

¶ 13    The Nolans' response to the citation objections further detailed the financial condition of Hearthside and Kunes. Specifically, they alleged (1) that, in 2012, Hearthside had defaulted on about $6,000,000 in loans guaranteed by Kunes and that Hearthside and Kunes owed The Private Bank and Trust Company (Private Bank) a deficiency of $2,000,000; (2) that when Private Bank received a citation from the Nolans, it confiscated the $21,000 in Hearthside's checking account balance and applied it to Kunes's deficiency; (3) that Chicago Title Insurance Company was the paying agent for the closing of Hearthside's home sales and the Nolans were entitled to know where the sales proceeds went; (4) that Kunes owns "at least two auto dealerships" and an "auto race track in Wisconsin, to which he flys [*sic*] often in a private airplane"; (5) that Kunes had taken no salary from Hearthside in over five years and operated Hearthside out of the same office as he operated an Orland Park auto dealership; (6) that Kunes sold his property in Orland Park for about $2,000,000; (7) that Hearthside has not declared dividends in four of the last five years; and (8) that Hearthside has failed to produce documents showing the "description, valuation and location of the some $850,000 in assets declared on its corporate income tax returns."

¶ 14    In reply to this objection, Kunes and the third-party citation respondents asserted that the Nolans mischaracterized their objection, as they did not object to any documents sought regarding Hearthside's income and assets. Rather, they claimed that they only objected to information sought regarding "non-judgment debtors." At this point in the proceeding, Kunes never claimed that the circuit court lacked personal jurisdiction over him.

¶ 15    On May 29, 2013, Judge 1 entered an order stating that "[d]efendant's objections to third-party citations are sustained." The order further stated that Hearthside was to file a sworn answer to the citation to discover assets as to the "LOCATION and legal description of the four parcels or realty shown as assets on its balance sheet of March 31, 2013 stating [the] *fair market value of each parcel* as declared by its accountants as amounting to $845,292.44, and any other assets." (Emphasis added).

¶ 16    On June 24, 2013, the Nolans brought a motion to compel the sale of real property and for a turnover order. The Nolans observed that Hearthside had disclosed the identification and location of four parcels of realty it possessed or owned: one parcel located in Manhattan, Illinois; one in New Lenox, Illinois; and two in Monee, Illinois, at Meadow Creek Airpark (Meadow Creek properties). The Meadow Creek properties were valued together at $83,449.30, and the New Lenox and Manhattan properties were valued together at $761,893.14. Hearthside, however, was in default on the mortgages of the New Lenox and Manhattan properties since at least December 26, 2012, and First Midwest Bank was "about to initiate foreclosure" on the two properties in New Lenox and Manhattan. Thus, the Nolans asserted that those assets were "apparently worthless." The Nolans requested in relevant part

that the court order Hearthside to sell the two properties in Monee and turn over the proceeds of the sales to the Nolans.

¶ 17        In a footnote in their motion to compel, the Nolans stated the following:

> "Although defendant was ordered on May 29, 2013 to state the fair market value of these four properties, they have refused to do [so], claiming they are under no obligation to state what they do not know. Hence, the creditor has used the valuations as stated on defendant's balance sheet, which is what they claimed on their 2012 corporate federal income tax return."

¶ 18        In support of their motion to compel, the Nolans also attached an affidavit submitted to them by Kunes, which alleged the parcel identification number (PIN), address, legal description, and value of the Meadow Creek properties and the two properties in New Lenox and Manhattan. The affidavit set forth the holders of any liens or interests on each of the properties, identifying First Midwest Bank as to the New Lenox and Manhattan properties and stating "[n]one that I am aware of" as to the Meadow Creek properties. One of the Meadow Creek properties was identified as PIN 21-14-18-305-017-0000, with a lengthy legal description identifying the property as "LOT 151 IN MEADOW CREEK" and a "[v]alue on books" of $41,724.65. As to the address of this property, the affidavit stated "N/A." The other Meadow Creek property was also valued at $41,724.65. No part of the affidavit states that Kunes was submitting the affidavit on behalf of Hearthside.

¶ 19        On June 26, 2013, Judge 1 ordered that the sheriff of Will County conduct a judicial sale of the Meadow Creek properties and that the proceeds be applied "in partial satisfaction of the judgment."

¶ 20        On July 2, 2013, the Nolans then brought a motion to modify the May 29, 2013, order to allow for the disclosure of trust agreements. They claimed that, since that order, they had learned through documents produced by Private Bank that Kunes personally guaranteed multiple loans to Hearthside that were in default. They also learned of four trust agreements in which Chicago Title Land Trust Company (Chicago Title) was the trustee for the benefit of "either or both" Kunes and Hearthside. The Nolans thus requested that the court modify its order sustaining Kunes's citations objection and order Chicago Title to produce all trust agreements in which Hearthside and Kunes are beneficiaries. They also requested that the court order Kunes to produce "all land or other trust agreements wherein he has had a beneficial interest from January 1, 2000 to the present."

¶ 21        On August 5, 2013, on behalf of both Hearthside and "third party respondent Terry Kunes," JR&A submitted a response to the motion to modify, arguing that the motion was "laced with irrelevant information, misrepresentations and untruths." JR&A clarified that they made no objections to "information sought from any third party" as to Hearthside but asserted that Kunes had objected to any information requested about him. They reiterated that the Nolans could not seek documents about "non-judgment debtors from third parties." The response brief contained no argument that the circuit court lacked jurisdiction over Kunes.

¶ 22        On August 14, 2013, also on behalf of Hearthside and Kunes, JR&A filed a motion for sanctions pursuant to Illinois Supreme Court Rule 137 (eff. July 1, 2013) and Rule 219(c) (eff. July 1, 2002) against the Nolans, alleging that the Nolans "improperly issued multiple citations to discover assets to third-parties [*sic*] requesting information" about Kunes. JR&A stated that, although the court sustained objections to discover Kunes's assets, the Nolans' counsel continued to seek documents relating to Kunes's finances. The Nolans responded that they

could not be subject to Rule 137 sanctions for contacting third parties because Rule 137 applied to court filings and not e-mails. They also stated they could not be subject to Rule 219(c) sanctions because they had a good-faith belief that the third parties they sought information from had property of Hearthside.

¶ 23 On September 30, 2013, the sheriff of Will County filed a report of sale and distribution of the two Meadow Creek properties, Lots 4 and 151, which were identified in Kunes's affidavit. The report reflected that the properties were sold to "PLAINTIFF Katherine M. Nolan, et al." who placed the highest bid of $160,000 in the form of a judgment credit, leaving a judgment deficiency of $104,487.31, as calculated by "Plaintiff."

¶ 24 The record reflects that on or about October 1, 2013, Hearthside filed for Chapter 11 bankruptcy proceedings and the United States Bankruptcy Court placed an automatic stay on this case. Also on October 1, 2013, the circuit court placed the case on the bankruptcy stay calendar, stayed all issues and pending citations, and ruled that no further citations or requests may be issued until the stay was lifted. On July 10, 2014, the case was removed from the bankruptcy stay calendar. On May 14, 2015, Hearthside's bankruptcy case was dismissed.[2]

¶ 25 Then, on July 9, 2015, the Nolans moved for judgment against citation respondent Kunes pursuant to section 2-1402 (735 ILCS 5/2-1402 (West 2012)) and for sanctions against Kunes and his attorneys. The Nolans observed that Hearthside, represented by JR&A, was "ordered to file a sworn answer to [their] citation attesting to the location and legal description of all realty shown on his balance sheet amounting to $845,292.44." Kunes, despite never appearing as a citation respondent for examination, submitted an affidavit that was not signed by his attorney. According to the Nolans, Kunes's affidavit did not disclose that there were over $4000 in delinquent assessments due to Meadow Creek Airpark or that there was an excess of $17,000 in delinquent real estate taxes due to the Will County treasurer on the Meadow Creek properties.

¶ 26 Significantly, the Nolans also alleged that Kunes had falsely stated Hearthside owned "Parcel 2: Lot 151 in Meadow Creek etc." (Lot 151) in the affidavit. The Nolans later learned,

---

[2]The parties dispute on appeal whether the circuit court had personal jurisdiction over Kunes to impose sanctions, with Kunes claiming that the supplementary proceedings in this case had terminated before the Nolans brought their motion for sanctions. Nonetheless, Kunes does not claim on appeal that the bankruptcy proceedings would have terminated the supplementary proceedings for purposes of determining whether the Nolans' sanctions motion was timely filed. As Kunes acknowledges, the United States bankruptcy court confirmed and approved a reorganization plan for Hearthside, but that plan was never implemented. For this reason, Kunes explains that his counsel later withdrew any argument before the circuit court regarding the bankruptcy proceedings' effect on the sanctions motion. See *In re Kang*, 18 B.R. 680 (Bankr. N.D. Ill. 1982) ("Chapter 11 of the [Bankruptcy] Code provides a vehicle whereby an honest debtor may attempt to rehabilitate himself and his business under the protection and guidance of the bankruptcy court."). But see *In re Little Creek Development Co.*, 779 F.2d 1068, 1073 (5th Cir. 1986) (finding that resort to the protections of Chapter 11 bankruptcy laws is not proper where "there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation"); *In re Original IFPC Shareholders, Inc.*, 317 B.R. 738, 749-51 (Bankr. N.D. Ill. 2004) (explaining various courts' approaches to determining whether to dismiss a Chapter 11 bankruptcy proceeding for lack of a good faith in filing, and noting that courts have observed that "the question is really whether the debtor has presented a legitimate reorganizational objective within the scope of the Bankruptcy Code or rather has presented 'tactical reasons unrelated to reorganization' ").

however, that there was no Lot 151 in Meadow Creek and that the supposed Lot 151 was "most likely land under water," which was never annexed to Meadow Creek Airpark and was "unbuildable and virtually worthless." However, Kunes had valued this property at $41,724.65.

¶ 27    The Nolans thus alleged that they were entitled to a judgment and sanctions against Kunes. They further stated they were entitled to sanctions against Kunes's attorney for failing to sign Kunes's affidavit and warrant that it was true.

¶ 28    The circuit court set a briefing schedule on the Nolans' motion for judgment and sanctions.

¶ 29    On October 19, 2015, the Nolans brought a motion to produce Kunes and an attorney from JR&A in person, as well as documents relating to certain lots in Meadow Creek Airpark, including Lot 151, on December 10, 2015. The hearing set for December 10 was ultimately continued to January 11, 2016.

¶ 30    On November 3, 2015, the Nolans additionally brought a request for admission of facts and genuineness of documents. The facts requested to be admitted included that Hearthside was a "privately held Illinois corporation in good standing" and that Kunes was its president, secretary, treasurer, and sole shareholder. As of January 1, 2010, Kunes was also president of the board or a member of Meadow Creek Airpark Association. While Hearthside at one time owned lots 1, 2, 3, 4, 14, 16, 17, 39, 45, 106, 146, 147, 148, 149, and 150 at Meadow Creek Airpark, neither Hearthside nor Kunes could produce documents showing the distribution of the net proceeds from the sale of these parcels.

¶ 31    The request to admit also stated that on May 6, 1996, the Meadow Creek Airpark Association conducted a meeting, at which Kunes offered on Hearthside's behalf to convey parts of Lot 1 and Lot 150 to Meadow Creek Airpark Association "into a supposed Lot 151." However, that conveyance never occurred. For the years 2010, 2011, 2012, and part of 2013, Hearthside had not paid Will County $8237 in real estate taxes for Lot 4, or $9310.92 in real estate taxes for "Lot 150, a/k/a Lot 151, *** whose address was unknown and is described partially as 'Lot 151.' " The request to admit also stated, "There was, and still is, no Lot '151' in existence at Meadow Creek Airpark on May 30, 2013." Rather, the property in question "is partially submerged under a pond, designated as Lot 1 and most of Lot 150 on the Property Map," and is unbuildable.

¶ 32    The request to admit further included that Hearthside had filed a disclosure statement as part of the bankruptcy proceedings, in which it included an unaudited balance sheet dated April 30, 2014, stating it had assets worth $83,449.30 consisting of the Meadow Creek properties. However, in the bankruptcy proceeding, Hearthside did not disclose the foreclosure on the Meadow Creek properties. The Nolans also stated that they received no response when they notified Hearthside's counsel in the bankruptcy proceedings that they learned Lot 151 did not exist, that there were unpaid real estate taxes and assessments on Lots 4 and "151," and that one of the parcels was unascertainable.

¶ 33    In addition to these facts, the request to admit also included the affidavit of John Decker, "a current board member for the Meadow Creek Community Association," who stated that, based on the plat of survey for the association, "[t]here is no 'lot 151' located in Meadow Creek." Further, Decker stated that as of May 30, 2013, Hearthside only owned Lot 4 in Meadow Creek. Decker additionally alleged that he was given no notice of the sheriff's sale on the Meadow Creek properties until the receipt of facsimile from the Nolans' attorney on February 26, 2015. On or about June 6, 2013, an attorney for JR&A, who had never

individually filed an appearance, had submitted Kunes's affidavit to the Nolans without signing it.

¶ 34    Along with the request to admit, the Nolans also filed a motion to vacate the circuit court's order for a sheriff's sale and to quash the sheriff's deed, stating that due to Kunes's misrepresentations regarding the Meadow Creek properties in his affidavit, they were "economically worse off," having bought the properties thinking they were much more valuable.

¶ 35    In support of the motion to vacate, they provided the affidavit of a licensed real estate broker with Remax, who alleged that he inspected Lot 4 and what was thought to be Lot 151 at Meadow Creek to ascertain their value for sale. According to the real estate broker, the Meadow Creek Association refused to provide access to the property with passcodes to the front gate, but a resident eventually let him enter. Upon inspecting the property, he observed that there was no Lot 151. Rather, the property described as Lot 151 "was probably part of Lots 1 and 150 which is submerged under a pond in a cul de sac." The real estate broker stated that the "supposed Lot 151 is unbuildable and virtually worthless," and that, "[i]n [his] opinion, no one would purchase a plot of land submerged under a pond." He also stated that Lot 4 "might have a fair market value of $7,500.00, based on what other properties in the locale have sold for over the past two years." However, the cost of keeping and maintaining Lot 4 would "far exceed the value of the land and would likely take five to ten years to sell, as there has been very little activity in Meadow Creek Airpark." The real estate broker added that the property would only be suitable for owners of an airplane, and the Nolans do not own an airplane.

¶ 36    On November 18, 2015, Judge 1 granted Kunes leave to file responses to the Nolans' motions and ruled that Kunes "does not waive any objection to the court's jurisdiction." In a subsequent filing by Kunes, Kunes's counsel explained that counsel had told Judge 1 that it intended to file an objection and motion to dismiss based on lack of jurisdiction. Given the explanation provided by Kunes's counsel, it appears that Judge 1 was merely giving Kunes's counsel leave to present argument on that day without raising the issue of jurisdiction and that the court was not necessarily ruling on whether Kunes could generally challenge jurisdiction at this stage.

¶ 37    That same day, Kunes filed a response to the Nolans' amended citation to discover assets, stating that (1) he was not in possession of any closing documents regarding lots in Meadow Creek Airpark, (2) he did not possess any documents showing the passcodes for Lots 4 and 151, (3) he had not participated in the Meadow Creek Airpark's board "in years," (4) he did not possess any documents showing the street addresses of Lots 4 and 151, and (5) he did not possess any documents showing real estate taxes being paid or discharged in bankruptcy.

¶ 38    On December 2, 2015, on behalf of Kunes, an attorney for JR&A filed a motion to strike the Nolans' request for admission of facts and genuineness of documents, claiming that the requests contained "irrelevant" facts and improper legal conclusions. The motion only singled out six particular requested facts as "improper" but did not explain why they were improper and stated, "These are not the only request for admissions [*sic*] that movant seeks to strike."

¶ 39    On December 4, 2015, Kunes's counsel also filed a "combined 2-615 motion to strike and 2-619 motion to dismiss plaintiffs' motion for judgment against citation respondent (Kunes) and for sanctions against his attorneys and plaintiffs' motion to vacate sheriff's sale and quash sheriff's deed." Counsel for Kunes claimed in relevant part that the Nolans' motions were

barred because they were untimely and that the court lacked jurisdiction. Specifically, Kunes's counsel asserted that the Nolans were required to bring their motion for sanctions within 30 days of the filing of the affidavit and that they could have brought a motion for sanctions in 2013 before the bankruptcy stay. Kunes's counsel also claimed that jurisdiction could not be revested in the circuit court because Kunes had preserved his objection based on personal jurisdiction on November 18, 2015, when he informed the court he intended to raise an objection based on jurisdiction.

¶ 40 On December 9, 2015, Judge 1 set briefing on Kunes's motions and set a hearing on them for April 13, 2016.

¶ 41 On January 14, 2016, the Nolans filed a motion to compel answers to their request for admission of facts and genuineness of documents, or to deem all requested facts admitted based on Kunes's failure to answer or object to them. At this point, Kunes had still not responded to the request. The Nolans also moved for the circuit court to deny Kunes's motion to strike the request to admit, arguing that Kunes was placing the burden on the court to determine which requests were improper and that granting Kunes's motion to strike the request "would result in further delays and significantly complicate the contested hearing on April 13, 2016." On February 4, 2016, Judge 2, temporarily filling in for Judge 1, ordered Kunes to answer or object individually to each of the requests for admission.

¶ 42 On April 20, 2016, after further briefing on the several motions and a continuance of the April 13, 2016, hearing, JR&A received leave of court to file an amended motion to dismiss the Nolans' motion for judgment and sanctions and motion to vacate order approving sheriff's sale due to lack of timeliness.

¶ 43 Then, on June 24, 2016, Judge 1 entered an order on the motions, ruling that the Nolans' motions were timely and denying Kunes's motion to dismiss for lack of timeliness. The court reasoned that no final order had yet been entered in the supplementary proceedings, the judgment had not been satisfied, and neither the court nor the creditors had terminated the proceedings.

¶ 44 On October 7, 2016, the Nolans filed a new motion for the entry of judgment pursuant to section 2-1402 and Rule 137 against Kunes and his attorneys in the amount of $93,220.34, which consisted of the loss they had suffered from Kunes's misrepresentations regarding the value of the Meadow Creek properties, attorney fees, and costs.

¶ 45 On October 28, 2016, Leyhane & Associates, Ltd., filed an appearance on behalf of Kunes.

¶ 46 On December 12, 2016, Kunes's new counsel filed a response to the new motion for judgment. Kunes's counsel argued that section 2-1402 did not apply to him because he did not withhold or conceal any property or asset belonging to Hearthside but, rather, disclosed assets that "were not as valuable as Plaintiffs hoped." According to Kunes, he could only be liable for the judgment against Hearthside if he was "guilty of transferring, disposing of, or otherwise interfering with" Hearthside's property, which he claimed he had not done. As to the affidavit, Kunes claimed that the values listed in the affidavit were "accounting entries" and "not estimates of market value on which [the Nolans] could or should rely." Kunes asserted that the circuit court never required the Nolans to do anything more than receive whatever money the Will County sheriff collected. Thus, the Nolans could not claim the right to a judgment against Kunes or seek to vacate the sheriff's sale, simply because they placed an unnecessary bid for the property.

¶ 47    Also on December 12, 2016, Kunes brought a motion to terminate proceedings. He claimed that, under Illinois Supreme Court Rule 277(f) (eff. Jan. 4, 2013), the proceedings automatically terminated six months from the respondent's first personal appearance pursuant to the citation. Based on this rule, Kunes alleged that the proceedings should have ended three years ago. Oddly, Kunes identified no date on which he filed an appearance to support his assertion.

¶ 48    In response, the Nolans stated they had no objection to terminating the proceedings once the circuit court entered the order quashing the sheriff's deed and awarding the sanctions for Kunes's false affidavit. The Nolans thus alleged that the circuit court should deny the motion to terminate proceedings without prejudice.

¶ 49    On December 27, 2016, the Nolans filed a reply brief in support of their motion for judgment and sanctions against Kunes and his attorneys, arguing that Kunes and JR&A had failed to answer the motion and that Kunes had submitted no counteraffidavits and had not denied that the affidavit was false. Thus, the Nolans argued the court should grant relief by default.

¶ 50    JR&A and Kunes's new counsel separately filed motions to strike portions of this reply brief, both arguing that the reply brief included subjects not contained in the original motion. Kunes's motion to strike additionally stated that it was filed "without waiving his position that the citation proceedings against him automatically terminated in 2013."

¶ 51    On January 12, 2017, Judge 1 held a hearing during which sanctions were discussed and entered orders that (1) granted JR&A's motion to strike portions of the reply brief, (2) gave the Nolans leave to file a motion for leave to file an amended motion for sanctions, (3) gave Kunes 7 days to amend his motion to strike the request to admit, and (4) set further briefing schedules.

¶ 52    On January 19, 2017, the Nolans submitted their motion for leave to file an amended motion for sanctions. They also filed their amended motion for sanctions, which requested that the court impose sanctions in the amount of $104,650.74, plus interest for the loss of value of judgment credit, on Kunes for submitting a false affidavit and on James J. Roche for failing to sign Kunes's affidavit. On January 20, 2017, Kunes filed an amended motion to strike the Nolans' request to admit, once again not responding to any particular requests but rather stating that the Nolans "had no right to propound a Request to Admit" against him.

¶ 53    After even further motion practice, Judge 1 entered an order on April 19, 2017, which (1) denied the Nolans' motion for judgment against Kunes, (2) denied the Nolans' motion for sanctions against Kunes and his attorneys, (3) denied the Nolans' motion to vacate the sheriff's sale and quash the sheriff's deed, (4) denied the Nolans' motion for leave to amend their July 9, 2015, motion for sanctions, (5) denied Kunes's motion to terminate proceedings, and (6) granted Kunes's motion to strike the request to admit. Judge 1 found that sanctions against Kunes "were not warranted," but did not explain its decision.

¶ 54    On May 4, 2017, the Nolans moved for "revision" of the April 19, 2017, order and requested an examination of Kunes in open court and an evidentiary hearing on the sanctions that should be imposed. The Nolans alleged that neither Kunes nor his attorneys ever denied that Kunes's May 30, 2013, affidavit provided false representations. They further argued that, having been denied relief for Kunes's "false affidavit," the Nolans were "saddled with false credit towards their judgment and a present and future liability for Will County [r]eal estate taxes on property which does not exist." Additionally, the Nolans asserted that the circuit court

failed to consider the facts and documents that should be deemed admitted due to Kunes's failure to respond to the request to admit.

¶ 55 Kunes moved once again to terminate the proceedings.

¶ 56 Then, in August 2017, Judge 1 entered an order reconsidering its prior order and (1) granted the Nolans' motion to reconsider the denial of their motion for judgment, (2) granted the Nolans' motion to reconsider the denial of their motion to quash the sheriff's deed, (3) granted the Nolans' motion to reconsider the granting of Kunes's motion to strike the Nolans' requests to admit, (4) granted the Nolans' motion to reconsider the denial of their motion for sanctions against Kunes and his attorneys, and (5) stayed the Nolans' petition for attorney fees. Judge 1 found that Rule 137 sanctions against Kunes were warranted because "[i]t was an error for the Court to overlook Kunes' conduct in delaying these proceedings by failing to appear in court when ordered." Judge 1 additionally added that Kunes's affidavit "was at least misleading, and certainly contrary to the Court's order of May 29, 2013, warrants sanctions against him." Judge 1 thus stated "[t]he parties should therefore schedule an evidentiary hearing before the Court to assist the Court in determining an appropriate sanction to be issued against Kunes."

¶ 57 Kunes and JR&A separately moved to vacate this August 2017 order. On September 18, 2017, the Nolans moved to set a hearing to set a final order assessing damages, attorney fees, sanctions, and to quash the sheriff's deed. Judge 1 set briefing on the motions to vacate and ordered the Nolans to file a motion "setting forth [their] current claim." Then, more than one month later, the Nolans moved for a final, appealable order that denies these motions to vacate and for Rule 137 sanctions, as well as a statement of continuing jurisdiction to impose sanctions.

¶ 58 The parties continued to file briefs on these new motions.

¶ 59 Then, on March 27, 2018, Judge 1 granted the Nolans' motion and entered sanctions in the amount of $129,878.99, which consisted of $88,154.35 in attorney fees and costs and $41,724.64 against Kunes. Judge 1 stated that "Kunes and Roche's arguments have been consistently rejected," and "[i]t is now time for it to end," and found that the court "clearly has jurisdiction."

¶ 60 Kunes moved to vacate the order, and JR&A moved to reconsider or "clarify" it. Kunes also submitted a "motion to clarify the record and for such other and further relief that follows from same," which included hundreds of pages in exhibits. In the motion itself, Kunes provided a 37-page personal account of the proceedings, claiming that he never asserted there was a Lot 151 in Meadow Creek Airpark and that the property he designated was not submerged. Kunes claimed that he merely provided the legal description associated with the PIN at issue, which described the parcel as "LOT 151 in Meadow Creek." Kunes also claimed that the property at issue did exist and that, while the property was the subject of a tax foreclosure proceeding in Will County, "that just proves, contrary to Plaintiffs' insistent assertions, that both parcels in fact exist." Kunes essentially stated it was not his fault that the Nolans bought the property and that their decision to do so "has nothing to do with the 'book value' of the parcels listed on the Hearthside Homebuilders corporate books." Kunes concluded that the Nolans could not "transmute an accurate, innocuous affidavit into a sanctionable one merely by repeating that it is false or fradulent [*sic*]."

¶ 61 The parties do not dispute that Judge 1, who had overseen most of the proceedings up to this point, retired in August 2018 and Judge 3 temporarily handled Judge 1's call.

¶ 62    On October 18, 2018, the parties appeared before Judge 3 to argue the motions of JR&A and Kunes regarding Judge 1's August 30, 2018, order. Judge 3 stated he was not making any findings that day as to "the state of the record" or "whether Kunes's motion, plaintiffs' answer[,] both or neither completely accurately reflect the events which had previously transpired in the collection proceedings." Judge 3 entered an order that in relevant part set a hearing on the motions to reconsider of Kunes and JR&A.

¶ 63    Judge 4 then took the case.

¶ 64    On October 31, 2018, Judge 4 heard the case and conducted a hearing on the motions to reconsider of Kunes and JR&A. Judge 4 asked counsel for Kunes to identify the substantive error of law that Judge 1 made in his March 28, 2018, decision, and counsel for Kunes acknowledged that he made no such argument. Nonetheless, Judge 4 was favorable to Kunes's sanctions argument, which asserted that the turnover order entered with respect to Kunes on June 26, 2013, had terminated the proceedings and that the Nolans filed a motion for a "judgment" more than two years later on July 9, 2015. We note that, at the hearing, Kunes's counsel misrepresented to the court that the Nolans had not asked for Rule 137 sanctions against Kunes in their July 2015 motion for judgment and sanctions. It appears that the court may have taken this statement as truthful.

¶ 65    Judge 4 stated:

        "All right. The other problem I had—I don't think you raise it—is the peculiarity of the sanction. You didn't raise any issue with that, but you sort of cast aspersions on it ***. You say it's [a] crazy sanction ***. My difficulty *** is that [Rule] 137 provides for only limited sanctions, and that's reasonable expenses or attorney's fees or nonmonetary sanctions.

            ***

        *** This doesn't fall within any of those categories. This isn't a reasonable expense. It's not an attorney fee award. It's just some punishment for the alleged false statement."

¶ 66    Judge 4 stated it was "less certain" of the argument that sanctions could not be applied based on the false affidavit because it was not filed with the court. Then, Kunes's counsel responded that the Nolans could not request sanctions against Kunes, as they were the ones who filed the affidavit with the court and then said it was false. According to Kunes's counsel, "[y]ou can't bring in an out-of-court statement and make it a court statement" by attaching it to a motion. Judge 4 stated, "That argument I like better, *** that he filed it rather than you filing it."

¶ 67    In response, the Nolans' counsel argued that the turnover order was entered against Hearthside, not Kunes, and a separate citation was served upon Kunes personally. Counsel for the Nolans observed that Kunes never appeared, and the circuit court indicated that it did not know this fact. Counsel then argued that, because Kunes never appeared, the "clock never started to tick" and the citations were continued beyond the deadline.

¶ 68    Judge 4 asked the Nolans' counsel whether the affidavit's alleged falsity could form the basis for sanctions when it was not directly filed with the court by Kunes, and the following colloquy occurred:

- 12 -

"[NOLANS' COUNSEL]: I mean, it would be sort of a mockery of justice, wouldn't it, to say that *** [the affidavit] formally has to be filed. It subsequently was filed by me as part of the execution process.

THE COURT: *** I think the reason that [Rule 137's limited application to filings with the court] might make sense is that some people say a lot of things that are untrue and we don't punish all untrue statements that people make even when they're in writing.

But in untrue statements that are made when they are filed as part of a pleading or paper that's filed with the court, that's a different story because they *** are filed with the intent to mislead the court. So there might be a reason to require a court filing because merely something that's written out, that's untrue, doesn't have any tendency to mislead the court.

[NOLANS' COUNSEL]: *** The order of May 29 said that the defendant was ordered to file a sworn answer to the citation to discover assets. They didn't file it."

Judge 4 then found that in *Krautsack v. Anderson*, 223 Ill. 2d 541, 562 (2006), the Illinois Supreme Court had limited the applicability of Rule 137 to documents filed directly to the court. Thus, Judge 4 held that Kunes could not be sanctioned for submitting the affidavit to the Nolans.

¶ 69        That same day, on October 31, 2018, Judge 4 entered an order ruling on Kunes's motion to vacate and JR&A's motion to reconsider. The order stated that the motions were granted "as to Roche, et al and Kunes on the sanctions" but denied the motions on all other grounds. The order further stated that the order quashing the sheriff's deed would stand and that the October 31, 2018, order was final. This appeal followed.

¶ 70                                          ANALYSIS
¶ 71                               A. Jurisdiction on Appeal
¶ 72        On March 27, 2018, Judge 1 granted the Nolans' motion for a final, appealable judgment but also granted Kunes leave to bring further motion practice challenging the court's rulings. On October 31, 2018, Judge 4 vacated Judge 1's decision to impose sanctions on Kunes and his counsel, affirmed Judge 1's other determinations, and held that the October 31, 2018, order was final. As we will later discuss in detail, there was no final order before this point. Accordingly, this court has jurisdiction over this case pursuant to Illinois Supreme Court Rule 303(a)(1) (eff. July 1, 2017), as a notice of appeal was filed with the clerk of the circuit court within 30 days after the entry of the final judgment entered on October 31, 2018.

¶ 73                B. The Nolans' Failure to Serve Roche With Notice of Appeal
¶ 74        We initially note that some portions of the Nolans' argument on appeal concerns sanctions against James J. Roche, of JR&A, and the Nolans' briefs name Roche as an appellee. However, the notice of appeal does not name Roche as a party to this appeal, and Roche has not filed an appellee's brief. In their reply brief, the Nolans acknowledge that their notice of appeal was "deficient in form" but claim it was "not deficient in substance and has caused no prejudice to James J. Roche." They claim that, because Roche has not filed a brief in this appeal, we must find in favor of the Nolans as to the question of whether Roche should be subject to sanctions.

¶ 75     "Appellate review is initiated by the filing of a notice of appeal," which "divests the trial court of jurisdiction and confers jurisdiction upon the appellate court." (Internal quotation marks omitted.) *Huber v. American Accounting Ass'n*, 2014 IL 117293, ¶ 8. "The purpose of a notice of appeal is to inform the prevailing party in the trial court that the other party seeks review of the judgment." *People v. Smith*, 228 Ill. 2d 95, 104 (2008). Illinois Supreme Court Rule 303(b)(1)(ii) (eff. July 1, 2017) more specifically mandates that the notice of appeal "bear the title of the case, naming and designating the parties in the same manner as in the circuit court and adding the further designation 'appellant' or 'appellee,' *e.g.*, 'Plaintiff-Appellee.' " Where the notice of appeal's deficiency is one of form and not of substance, and where the appellee is not prejudiced, an appellant's failure to strictly comply with the form of notice is not fatal. *Hatchett v. W2X, Inc.*, 2013 IL App (1st) 121758, ¶ 26.

¶ 76     Our records show that the Nolans never properly named James J. Roche as an appellee in their notice of appeal and did not serve him personally with notice as an appellee. Specifically, the notice of appeal only lists the Nolans as "Judgment Creditors," "Hearthside Homebuilders, Inc., f/u/o Katharine M. Nolan, et al." as "Judgment Debtor," and Kunes as "Citation Respondent."[3] The notice does not designate who is an appellant or appellee, and it states that it was only served upon Kunes and "Hearthside Homebuilders, Inc. c/o James J. Roche," but not Roche personally as a party. Moreover, the docketing statement in our records only lists Kunes as an appellee and does not state that Roche is party to this appeal. According to the certificates of service attached to the Nolans' opening and reply briefs, even the Nolans' briefs were never personally sent to Roche—rather, they state that they were emailed to Kunes's appellate counsel, who is not of JR&A, and to another attorney from JR&A.

¶ 77     There is nothing in the record showing that Roche ever personally received notice that he was named as a party to this appeal, or that Roche received any of the briefs or docketing statement filed in this appeal. The Nolans never at any point sought to amend their notice of appeal. Instead, they now seek to use their failure to properly serve and name Roche as an appellee to their advantage. This error cannot be overlooked, and the Nolans cannot claim entitlement to a default ruling in their favor and against Roche based on their own procedural oversight. *Nussbaum v. Kennedy*, 267 Ill. App. 3d 325, 328-29 (1994) (finding we lacked jurisdiction over persons who received a notice of appeal, where those persons were not named as parties in the notice of appeal, and where those persons also did not receive the appellant's brief or the docketing statement).

¶ 78     As such, we lack jurisdiction over Roche in this case and cannot reach any argument regarding the circuit court's decision to overturn the sanctions imposed on Roche.

¶ 79                              C. Kunes's Motion to Dismiss

¶ 80     Along with his appellee's brief, Kunes brought a motion to dismiss the Nolans' appeal, which we took with the case. The motion to dismiss asserts that the Nolans failed to present a full index outlining the content of this case's voluminous record. Kunes observes that the Nolans instead merely copied the table of contents prepared by the court clerk. The motion is

---

[3]While Kunes is also not listed in the notice of appeal as an appellee, we note that Kunes was included as an appellee in the docketing statement, and the notice and briefs both state that they were personally served upon him. Given these facts, and the fact that Kunes filed an appellee's brief, his inclusion as an "appellee" in the notice of appeal is not at issue.

- 14 -

based on Illinois Supreme Court Rule 342 (eff. July 1, 2017), which requires an appellant's brief to include an appendix and a table of contents to the appendix.

¶ 81    It is within this court's discretion to strike a brief and dismiss an appeal based on failure to comply with this court's procedural rules. *Longo Realty v. Menard, Inc.*, 2016 IL App (1st) 151231, ¶ 18. We ultimately find dismissal of the appeal is unnecessary, as the Nolans' brief is adequate in most respects, at least as it relates to Kunes, and the deficiencies do not hinder our ability to review the issues on appeal. We therefore deny Kunes's motion to dismiss and will consider the merits of the issue on appeal. *Id.* (declining to dismiss an appeal for failure to comply with Illinois Supreme Court Rule 341 (eff. Jan. 1, 2016), where the brief was "adequate in most respects," and the court was still able to review the issues at hand).

¶ 82                                      D. Standard of Review

¶ 83    Generally, it is within the sound discretion of the circuit court whether to impose sanctions under Rule 137, and we will not reverse that decision absent an abuse of discretion. *Morris B. Chapman & Associates, Ltd. v. Kitzman*, 193 Ill. 2d 560, 579 (2000). We apply this deferential standard "because it is the trial court which is in the unique position of being able to observe the witnesses and how they testified, as well as all the other circumstances relating to their credibility." *U.S. Bank v. YMCA of Metropolitan Chicago*, 409 Ill. App. 3d 548, 555 (2008). However, where the trial court's determination is based on documentary submissions alone and credibility is not a factor, our review is *de novo*, since "we have before us all that was before the trial court" and the only question before the court is "the legal conclusion to be drawn from a given set of facts." *Independent Trust Corp. v. Hurwick*, 351 Ill. App. 3d 941, 952 (2004).

¶ 84    Here, Judge 4 issued the order challenged on appeal and heard oral arguments but conducted no evidentiary hearing and did not base his ruling on any matter other than the record that is currently before us. His finding was expressly one based in law, as he found that there was no basis in law for Judge 1 to impose sanctions on Kunes based on the facts of the case, and so our review is *de novo*. See *id.* Moreover, the issues before us concern matters also subject to *de novo* review under these circumstances. *Lake Environmental, Inc. v. Arnold*, 2015 IL 118110, ¶ 12 (*de novo* review for lower court's interpretation of supreme court rules); *McNally v. Morrison*, 408 Ill. App. 3d 248, 254 (2011) (*de novo* review for personal jurisdiction when circuit court bases its decision solely on documents before us). For all of these reasons, we find our review on appeal is *de novo*.

¶ 85                                 E. Personal Jurisdiction Over Kunes

¶ 86    We must next determine whether the circuit court had personal jurisdiction over Kunes to impose sanctions on him in the first place. We initially note that Kunes's argument regarding personal jurisdiction essentially amounts to an argument regarding timeliness. According to Kunes, the proceedings against him terminated long before the Nolans filed their motion for sanctions—however, Kunes does not appear to have a defined theory of when the proceedings ended. Kunes proposes that the termination occurred either on May 29, 2013, when the trial court sustained Kunes's objections to the citations regarding his personal information, or on June 26, 2013, when the circuit court ordered the sheriff to sell the Meadow Creek properties and apply the sale proceeds to partially satisfy the judgment. Therefore, Kunes claims the circuit court's personal jurisdiction over Kunes would have terminated by the time the Nolans

- 15 -

first moved for sanctions against him in July 2015.

¶ 87                                                           1. Kunes's Involvement in the Proceedings

¶ 88          Before reaching the issue of whether the Nolans timely moved for sanctions during the supplementary proceedings, we first explain why, given Kunes's involvement in the supplementary proceedings, the circuit court could have imposed sanctions against Kunes at *some* point. Under section 2-1402, "a judgment creditor may begin supplementary proceedings against a third party as a means of discovering assets belonging to the judgment debtor that the third party may have in its possession." (Internal quotation marks omitted.) *Scarlato*, 2017 IL App (1st) 161943, ¶ 31. Pursuant to section 2-1402, the Nolans brought a citation to discover assets against Kunes as a third-party citation respondent. Given the facts on record regarding Kunes's relationship with Hearthside, at least as set forth by the Nolans, it appears that Hearthside and Kunes may have both held some interest in many of the same assets. Kunes, as the president, secretary, treasurer, and sole shareholder of Hearthside, also would have likely had more knowledge regarding Hearthside's assets than anyone else. Thus, the Nolans were justified in calling Kunes in as a third-party citation respondent to be examined regarding any of Hearthside's assets that he may have possessed or had knowledge of.

¶ 89          However, Kunes did not appear at all but rather objected to the citation, claiming that it sought his personal information. We note that based on the rider attached to the citations to discover assets, it appears the only information the Nolans sought that would have been seen as "personal" to Kunes were his "personal federal and Illinois income tax returns." The vast remainder of the citation concerned information regarding Hearthside, and Kunes even qualified that he had no objection to any examination of him regarding Hearthside's assets. Nonetheless, Kunes apparently succeeded in distracting the circuit court from his failure to comply with the citation, as months of motion practice regarding the citation's propriety overshadowed the fact that Kunes did not appear for examination in the first place.

¶ 90          Then, after the circuit court ordered Hearthside to file a sworn answer regarding four particular parcels of real property, Kunes chose to personally submit an affidavit in his own name, and not on behalf of Hearthside, directly to the Nolans. Illinois Supreme Court Rule 137(a) (eff. July 1, 2013) provides that, where a document subject to Rule 137 is signed in violation of the rule, the court may impose sanctions "upon the person who signed it, a represented party, or both." Kunes signed the affidavit in question in his own name. At the time the Nolans filed their motion for sanctions based on Kunes's affidavit, Kunes had also failed to appear for examination as the citation required and thus had yet to resolve the matters for which he was involved in the supplementary proceeding.

¶ 91          Accordingly, the circuit court could have imposed sanctions against Kunes at some point for any "pleading, motion or other document" subject to Rule 137 sanctions. Ill. S. Ct. R. 137(b) (eff. July 1, 2013). We now consider whether the Nolans timely moved for sanctions against Kunes.

¶ 92                                                           2. Timeliness of the Nolans' Motion for Sanctions

¶ 93          Illinois Supreme Court Rule 137(b) (eff. July 1, 2013) provides:

              "*Procedure for Alleging Violations of This Rule.* All proceedings under this rule shall be brought within the civil action in which the pleading, motion or other document

referred to has been filed, and no violation or alleged violation of this rule shall give rise to a separate civil suit, but shall be considered a claim within the same civil action. Motions brought pursuant to this rule must be filed within 30 days of the entry of final judgment, or if a timely post-judgment motion is filed, within 30 days of the ruling on the post-judgment motion."

Based on this language, the Nolans must have either brought their motion for sanctions during the proceedings or within 30 days of the final judgment. We now consider whether the motion for sanctions was brought within 30 days of the final judgment in the proceedings.

¶ 94　　　Under Illinois Supreme Court Rule 277(f)(1), (2) (eff. Jan. 4, 2013), a supplemental proceeding will either terminate "by motion of the judgment creditor, order of the court, or satisfaction of the judgment," or terminate automatically six months from the sooner of two events: (1) "the respondent's first personal appearance pursuant to the citation," or (2) "the respondent's first personal appearance pursuant to subsequent process issued to enforce the citation."

¶ 95　　　We find that the six-month automatic termination could not have occurred before the Nolans moved for sanctions because Kunes did not appear for examination as he was ordered to do "to be examined under oath to discover assets or income not exempt from enforcement of a judgment." See *TM Ryan Co. v. 5350 South Shore, L.L.C.*, 361 Ill. App. 3d 352, (2005) (" 'A citation to discover assets directs a party to present himself before the court on a specified day for an examination concerning the property or indebtedness of the judgment debtor. The appearance contemplated by [section 2-1402] is clearly more than mere physical presence within the judicial district.' " (quoting *Textile Banking Co. v. Rentschler*, 657 F.2d 844, 852 (7th Cir. 1981))).

¶ 96　　　Kunes argues that requiring him to appear in person, when the court's order sustaining his objection "obviated" his appearance, would allow the Nolans to "theoretically hold [Kunes] as a respondent indefinitely." However, Kunes's reasoning is unconvincing.

¶ 97　　　On May 29, 2013, the circuit court sustained Kunes's objection, which only related to Kunes's personal financial information and assets in which Hearthside held no interest. As Kunes's counsel acknowledged, Kunes never objected as to his examination regarding any assets belonging to Hearthside that could be discovered through Kunes. Thus, the circuit court's decision to sustain Kunes's objection as to Kunes's personal information did not end the proceedings or Kunes's involvement in them, and it would also not have indefinitely kept Kunes in the proceedings. There were still matters involving Kunes that needed to be resolved. Kunes simply had to resolve those matters by personally appearing to be examined under oath as to Hearthside's assets. He never did this. To the extent that any aspect of these proceedings appeared "indefinite," it is evident from the record that such indefiniteness was at least in part the fault of Kunes and his attorneys.

¶ 98　　　Because Kunes did not appear before the motion for sanctions was filed, the proceedings against Kunes would need to have terminated "by motion of the judgment creditor, order of the court, or satisfaction of the judgment." See Ill. S. Ct. R. 277(f) (eff. Jan. 4, 2013). Generally, "[a]n order in a section 2-1402 proceeding is *** final when the citation petitioner is in a position to collect against the judgment debtor or a third party, or the citation petitioner has been ultimately foreclosed from doing so." (Internal quotation marks omitted.) *PNC Bank, N.A. v. Hoffmann*, 2015 IL App (2d) 141172, ¶ 24.

¶ 99    As we have stated, Kunes proposes that the proceedings either terminated with (1) the circuit court's May 29, 2013, order sustaining Kunes's objections to his citation or (2) the circuit court's June 26, 2013, order setting a sheriff's sale of the Meadow Creek properties. As we have also stated, the May 29, 2013, order only foreclosed the Nolans from seeking information regarding Kunes's personal financial information, not information that Kunes may have had regarding Hearthside. Thus, we conclude that the May 29, 2013, order was not a final order, even as to Kunes alone. Similarly, we also conclude that the June 26, 2013, order setting a sheriff's sale of the Meadow Creek properties was not a final order, as it neither satisfied the Nolans' judgment in whole nor foreclosed the Nolans from doing so.

¶ 100    Kunes relies on *Williams Montgomery & John Ltd. v. Broaddus*, 2017 IL App (1st) 161063, in claiming that a final judgment occurred prior to the Nolans filing their sanctions motion. Specifically, Kunes cites this court's statement in *Broaddus* that "[c]itation orders entered in supplementary proceedings pursuant to section 2-1402 become final and appealable upon their entry." *Id.* ¶ 34. However, the turnover order that we found to be final and appealable in *Broaddus* concerned assets that amounted to twice the judgment owed to the creditor. *Id.* ¶¶ 14, 19, 35. Thus, the turning over of these assets would have effectuated a "satisfaction of the judgment" as contemplated by Rule 277. See Ill. S. Ct. R. 277(f) (eff. Jan. 4, 2013). Here, the circuit court's June 26, 2013, order expressly stated that the turnover of the Meadow Creek properties amounted to only a "partial satisfaction" of the judgment, and the record does not reflect that the court ever intended this order to terminate the proceedings entirely. Kunes has failed to establish that any final judgment had occurred by the time the Nolans brought their motion for sanctions against him in July 2015.

¶ 101    We reiterate that Kunes's argument based on personal jurisdiction essentially amounts to an issue of timeliness. However, we also note that Kunes cannot challenge the circuit court's personal jurisdiction over him because he personally engaged in litigation in the supplementary proceedings after the dates on which he claims the court's personal jurisdiction over him ceased.

¶ 102    Section 2-301(a) of the Code (735 ILCS 5/2-301(a) (West 2018)) provides:

"(a) Prior to the filing of any other pleading or motion other than as set forth in subsection (a-6), a party may object to the court's jurisdiction over the party's person, *** on the ground that the party is not amenable to process of a court of this State ***, by filing a motion to dismiss the entire proceeding or any cause of action involved in the proceeding or by filing a motion to quash service of process."

Under section 2-301(a-6), "[a] party filing any other pleading or motion prior to the filing of a motion objecting to the court's jurisdiction over the party's person as set forth in subsection (a) waives all objections" to the circuit court's personal jurisdiction, unless that initial motion is "[a] motion for an extension of time to answer or otherwise plead," or "[a] motion filed under Section 2-1301, 2-1401, or 2-1401.1." *Id.* § 2-301(a-6)(1)-(2).

¶ 103    Although the circuit court ordered Hearthside to file a sworn answer regarding the four parcels of real property, Kunes chose to personally submit an affidavit to the Nolans. Then, well beyond 30 days after the entry of both orders that Kunes claims are "final," JR&A submitted briefs on behalf of Kunes that did not object to personal jurisdiction. Specifically, in August 2013, JR&A submitted a response to the Nolans' motion to modify the May 29, 2013, order on behalf of Kunes and asserted no objection based on personal jurisdiction. That

same month, JR&A also submitted a motion for sanctions against the Nolans on behalf of Kunes.

¶ 104    It was not until December 4, 2015, that Kunes's counsel raised the claim that the circuit court lacked jurisdiction over Kunes. Although the circuit court eventually allowed Kunes to preserve his personal jurisdiction objection in 2015, Kunes had waived the issue well before that point. Kunes cannot now, after continuously engaging in the substance of this case, claim that the circuit court lacked jurisdiction over him and wash away years of litigation in which he actively participated. *Shipley v. Hoke*, 2014 IL App (4th) 130810, ¶ 86 (applying the waiver rules of section 2-301 of the Code (735 ILCS 5/2-301 (West 2012)) in the context of a supplementary proceeding and finding that an attorney waived his objection to personal jurisdiction by first filing a motion to quash containing no objection based on personal jurisdiction).

¶ 105    Accordingly, we find that the circuit court retained personal jurisdiction over Kunes to impose sanctions on him and that the Nolans timely filed their motion for sanctions during the course of the proceedings. We now must determine whether Rule 137 could apply to Kunes's affidavit, when Kunes did not file the affidavit directly with the circuit court.

¶ 106                            F. Falsity of Affidavit

¶ 107    We note that in his response brief, Kunes attempts to argue that the affidavit he submitted was not false because the property described in his affidavit existed. Kunes asserts that Will County taxed Lot 151 and has filed a petition for tax deed to take Lot 151 from the Nolans and that the Will County Supervisor of Assessments displays an aerial photograph of the lot on its website. However, just as he did before the circuit court, Kunes attempts to distract this court from the fact that he has yet to deny that he disclosed a value for the property in question that was either false or misleading.

¶ 108    Accordingly, we find Kunes's factual assertion that his affidavit did not contain false information itself lacks merit.

¶ 109            G. Applicability of Rule 137 Sanctions to Kunes's Affidavit

¶ 110    We now consider whether Rule 137 sanctions could be imposed based on Kunes's affidavit. The Nolans argue that Judge 4 abused his discretion in vacating Judge 1's decision to impose sanctions, as Judge 1 had observed the parties' conduct and filings for five years and was in a better position to determine whether sanctions were appropriate. However, Kunes responds that Judge 4 properly vacated Judge 1's decision because Rule 137 only applies to matters filed directly with the court. Thus, Kunes claims he could not have been subject to sanctions as a matter of law.

¶ 111    Illinois Supreme Court Rule 137(a) (eff. July 1, 2013) provides:

> "Every pleading, motion and other document of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading, motion, or other document and state his address. *** The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith

argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *** If a pleading, motion, or other document is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other document, including a reasonable attorney fee."

¶ 112 There is no legal authority expressly stating that Rule 137 is inapplicable to matters not filed directly with the court, particularly in circumstances such as these, where the matters were material to the eventual resolution of the court proceedings and the circuit court ordered them to be filed. However, we find that, based on the language of Rule 137 as a whole and on the Illinois Supreme Court's own interpretation of Rule 137 in examining other issues, we cannot interpret Rule 137 to apply under these circumstances.

¶ 113 Our supreme court has observed that "Rule 137 requires that any pleading, motion, or other document *filed in court* be well grounded in fact and *** warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and not brought for any improper purpose." (Emphasis added and internal quotation marks omitted.) *Lake Environmental, Inc.*, 2015 IL 118110, ¶ 7. Rule 137 was adopted "as a means of preventing false and frivolous *filings*." (Emphasis added.) *Cult Awareness Network v. Church of Scientology International*, 177 Ill. 2d 267, 279 (1997); see also *Sundance Homes, Inc. v. County of Du Page*, 195 Ill. 2d 257, 285-86 (2001) ("The purpose of Rule 137 is to prevent abuse of the judicial process by penalizing claimants who *bring vexatious and harassing actions ***.*" (Emphasis added.)). Other portions of Rule 137 suggest that the rule was intended to only apply to court filings, as it states that proceedings under the rule must be brought "within the civil action in which the pleading, motion or other document referred to *has been filed*." (Emphasis added.) Ill. S. Ct. R. 137(b) (July 1, 2013).

¶ 114 Given Rule 137 as a whole, and the supreme court's consistent language in interpreting Rule 137, we find that Rule 137 does not apply to matters other than those filed with the court. While the Nolans eventually did file Kunes's affidavit with the court, we cannot recognize a rule where a litigant may subject an opposing party to Rule 137 sanctions by filing with the court an inaccurate out-of-court statement made by the opposing party. Thus, we cannot conclude that Rule 137 applied to Kunes's affidavit because the Nolans filed it themselves.

¶ 115 Additionally, this court cannot construe Rule 137 to provide for sanctions for which it does not expressly provide. The supreme court has noted that "a court may not inject provisions that are not found in a statute," and we must apply rules of statutory construction when interpreting supreme court rules. *People v. Roberts*, 214 Ill. 2d 106, 116 (2005). Because Rule 137 specifically "is penal in nature, it is narrowly construed." *Lake Environmental, Inc.*, 2015 IL 118110, ¶ 12.

¶ 116 We recognize that Kunes failed to comply with a number of court orders—to name three particularly salient instances, he failed to appear for examination as required by the citation issued as to him, he failed to answer a request to admit as ordered by the circuit court, and he failed to file his affidavit concerning the properties at issue as the court also ordered him to do. We also recognize that, had Hearthside and Kunes complied with the court's order and filed Kunes's affidavit, Rule 137 would have unambiguously applied.

¶ 117      However, this court cannot make right the Nolans' counsel's own failure to effectively pursue accountability on Kunes's part for his numerous acts of disobedience, especially when the circuit court certainly would have had grounds to enforce the orders Kunes disobeyed. See Ill. S. Ct. R. 277(h) (eff. Jan. 4, 2013) ("Any person who fails to obey a citation, subpoena, or order or other direction of the court issued pursuant to any provision of this rule may be punished for contempt."); see also *In re Estate of Wernick*, 176 Ill. App. 3d 153, 156 (1988) ("Courts have inherent power to punish for contempt to maintain their authority and to administer and execute judicial power."); *Day v. Schoreck*, 31 Ill. App. 3d 851, 852 (1975) ("It is clear that all courts have the inherent power to punish for contempt as an essential incident to the maintenance of their authority and the proper administration and execution of judicial powers."). We also cannot make right the Nolans' errors in purchasing the Meadow Creek properties for a price substantially higher than the value listed in Kunes's affidavit, particularly when the record suggests that the Nolans' counsel was aware that the affidavit intentionally did not list the Meadow Creek properties' fair market value.

¶ 118      The circuit court expressly entered sanctions against Kunes pursuant to Rule 137, and not any other rule or source of authority, but did not identify a proper ground allowing for Rule 137 sanctions. See *Cirrincione v. Westminster Gardens Ltd. Partnership*, 352 Ill. App. 3d 755, 761 (2004) ("A sanction order, at the minimum, should specifically identify the rule under which the order was entered, *** as well as the specific reasons for entry of the sanction order."). As to the sanctions against Kunes, the only question that has been presented to us on appeal is whether the circuit court could have appropriately entered Rule 137 sanctions based on an affidavit that Kunes did not file with the circuit court. We have found that Rule 137 sanctions could not be imposed, as Rule 137 only applies to matters filed with the court. Accordingly, the circuit court did not err in overturning the court's previous determination to impose Rule 137 sanctions against Kunes.

¶ 119                                   CONCLUSION

¶ 120      For the foregoing reason, we affirm the judgment of the circuit court.

¶ 121      Affirmed.